LINK: 220

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-05600 GAF (MANx) | Date | November 21, 2014 |
|---|---|---|---|
| Title | Wishtoyo Foundation v. Magic Mountain LLC et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Stephen Montes Kerr | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:** (In Chambers)

## ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(c)

Pending before the Court is Defendants Magic Mountain LLC ("MMLLC") and Six Flags Theme Parks, Inc.'s ("SFINC") Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c), filed on October 24, 2014. (Docket No. 220.) Plaintiffs opposed on November 10 and Defendants replied on November 17. (Docket Nos. 255, 258[1].) The Court finds the matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons set forth below, the motion is **DENIED**.

## I.
## BACKGROUND

The issue at the heart of Defendants' motion for judgment on the pleadings is whether, as a matter of law, a National Pollutant Discharge Elimination System ("NPDES") individual permit and NPDES general permit are mutually exclusive. In support of their view that a facility cannot simultaneously be subject to both an individual and general permit, Defendants rely on 40 C.F.R. § 122.28(b)(3)(iv), which states:

---

[1] The memorandum of points and authorities in support of Defendants' reply is 28 pages long, which exceeds the 25-page limit set forth in the Local Rules. C.D. Cal. Local Rule 11-6 ("No memorandum of points and authorities . . . shall exceed 25 pages in length, excluding indices and exhibits, unless permitted by order of the judge."). Although the Court has reviewed pages 26-28 of Defendants' reply, Defendants are admonished to comply with the Local Rules in all future filings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-05600 GAF (MANx) | Date | November 21, 2014 |
|---|---|---|---|
| Title | Wishtoyo Foundation v. Magic Mountain LLC et al | | |

> When an individual NPDES permit is issued to an owner or operator otherwise subject to a general NPDES permit, the applicability of the general permit to the individual NPDES permittee is automatically terminated on the effective date of the individual permit.

Defendants rely on the language of the regulation and general permit, EPA comments, and surrounding regulations to support their interpretation that individual and general permits were never meant to be issued concurrently.  First, language in the Fact Sheet for the general permit under "Types of Discharges Not Covered By This Permit" includes "Facilities Covered By Individual Permits" and "Facilities Which Have NPDES Permits Containing Storm Water Provisions."  Mem. at 4-5; Docket No. 26-7 at V; Declaration of Lia C. Comerford ¶ 3, Ex. A at 9.

Secondly, Defendants provide examples of EPA responses during notice-and-comment periods for the proposed general NPDES permits for Alaskan placer miners and construction activity.  Mem. at 10-12; RJN, Ex. C (in response to commentor's suggestion that individual permits address the automatic termination of a general permit [GP], Region 10 of the EPA responded: "If EPA were to issue an individual permit to a facility, it would incorporate the necessary requirements of the GP into the individual permit to lessen the paperwork the permittee would need to keep track of . . . . Thus, the GP would no longer apply and would automatically terminate upon the issuance of an individual permit."); see also RJN, Ex. D (in NPDES general permit for stormwater discharges associated with construction activity, permittee's coverage under the general permit continues until "[i]ssuance of an individual permit for the permittee's discharges").

Finally, Defendants point to 40 C.F.R. § 122.26 (Application requirements for storm water discharges associated with industrial activity and storm water discharges associated with small construction activity), which states, "Dischargers of storm water associated with industrial activity and with small construction activity are required to apply for an individual permit **or** seek coverage under a promulgated storm water general permit."  40 C.F.R. § 122.26 (emphasis added).

Based on the foregoing, Defendants contend that the seventh through tenth causes of action for alleged violations of the general permit should be dismissed as a matter of law because the NPDES permitting scheme never intended for any facility to be covered by both a general permit and an individual permit.  Mem. at 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-05600 GAF (MANx) | Date | November 21, 2014 |
|---|---|---|---|
| Title | Wishtoyo Foundation v. Magic Mountain LLC et al | | |

    Plaintiffs make several arguments faulting Defendants' application of the regulation. First, they argue the facility itself submitted a Notice of Intent ("NOI") voluntarily seeking coverage under the general permit in February 1998 despite having an individual permit (Defendants now claim that SFMM "mistakenly filed" that NOI). Secondly, they state that 40 C.F.R. § 122.28(b)(3)(iv) is inapplicable because it only applies to facilities that already have general permit coverage and are then issued individual permits. Third, they contend the regulation is only triggered by issuance of an individual permit, not by permit renewal or amendment. Finally, they claim California has imposed more extensive requirements for terminating general permit coverage, including a Notice of Termination ("NOT"), which Defendants did not submit until November 2013.

## II.
## LEGAL STANDARD

    Federal Rule of Civil Procedure 12(c) allows a party to move for judgment after the pleadings are closed, but early enough not to delay trial. "Judgment on the pleadings is proper when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." Stanley v. Trustees of Cal. State Univ., 433 F.3d 1129, 1133 (9th Cir. 2006); see also Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). Because a motion for judgment on the pleadings is "functionally identical" to a motion to dismiss, the standard for a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion. See Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d 1049, 1052 n.1 (9th Cir. 2008).

    Under the motion to dismiss standard, a complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court must "accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." Fleming, 581 F.3d at 925.

    "When considering a motion for judgment on the pleadings, this court may consider facts that are contained in materials of which the court may take judicial notice." Heliotrope General, Inc. v. Ford Motor Co., 189 F.3d 971, 981 n. 18 (9th Cir.1999) (internal quotation marks omitted). Judicial notice may be taken "where the fact is 'not subject to reasonable dispute,' either because it is 'generally known within the territorial jurisdiction,' or is 'capable of accurate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-05600 GAF (MANx) | Date | November 21, 2014 |
|---|---|---|---|
| Title | Wishtoyo Foundation v. Magic Mountain LLC et al | | |

and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" Castillo–Villagra v. I.N.S., 972 F.2d 1017, 1026 (9th Cir.1992) (quoting Fed. R. Evid. 201(b)).[2]

## III.
## DISCUSSION

It appears that both parties agree that the facility did not have to submit a NOI to be bound by the general permit, but did so anyway (conduct Defendants now consider a "mistake"). See Reply at 3. Both sides also appear to agree that if Defendants had submitted an NOT on the grounds that the individual permit obviated the need for coverage under the general permit, the NOT would have been granted. See Opp. at 19-20 ("[W]hile a facility's coverage might qualify for termination if that facility becomes covered by another permit, California will not recognize that termination until the facility operator submits an NOT to the Regional Board."). The issue raised in this motion is whether a facility that voluntarily submitted a NOI to be bound by the general permit can, as a matter of law, disclaim that coverage years later by referring to its individual permit.

To understand the potential consequences of the relief sought by Defendants' motion, the Court has identified three possible scenarios involving the general permit and individual permit:

**1. The general permit is less restrictive than the individual permit**: In this scenario, conduct that violates the individual permit necessarily violates the general permit. Defendants mention in their reply that the general permit is generally "less stringent" than the individual permit. (Reply at 5.) In such cases, compliance with the individual permit would automatically result in compliance with the general permit. See Reply at 5, n.5 (explaining that the general permit only requires submission of a Storm Water Pollution Prevention Plan [SWPPP] whereas the individual permit requires the SWPPP plus a Best Management Practices Plan and a Compliance Plan). The Court understands Defendants' position to be that, in this scenario, the facility should not be liable for violations of both the individual and general permits for the same conduct. Based on the regulation and language in the general permit stating it does not apply to discharges regulated by existing permits, the Court agrees that Defendants should not be subject to dual permit violations for the same conduct and that, in such cases, the individual permit should control.

---

[2] The Court **GRANTS** the parties' unopposed requests for judicial notice and takes judicial notice of Exhibits A through D in Defendants' Request for Judicial Notice (Docket No. 221), Exhibits A, D, E, and G to the Comerford Declaration (Opp. at 24, n.14), and Exhibits A through D in Defendants' RJN submitted in support of their reply (Docket No. 257).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-05600 GAF (MANx) | Date | November 21, 2014 |
|---|---|---|---|
| Title | Wishtoyo Foundation v. Magic Mountain LLC et al | | |

**2. The general permit is coextensive with the individual permit**: In this scenario, the individual permit incorporates aspects of the general permit. Again, Defendants seek to avoid dual violations for the same conduct. As there is no conflict between the two permits, the individual permit controls.

**3. The general permit is more restrictive or contains a provision that the individual permit does not**: This situation presents a conflict that cannot be resolved in this motion. If Plaintiffs allege violations unique to the general permit, there is strong evidence that those discharges are still actionable under the general permit. For example, page V of the general permit Fact Sheet, entitled "Types of Discharges Not Covered By This General Permit," states, "Some storm water discharges may be regulated by other individual or general NPDES permits issued by the State Water Board or the Regional Water Boards. This general permit shall not regulate **these discharges**." Reply at 9; Docket No. 158-1 at 7 (emphasis added). This language plainly contemplates that a facility could be covered by both a general and individual permit though not with respect to the specific discharges that are regulated in the individual permit.

Similar language is included in another portion of the general permit Fact Sheet which states:

> Regional Water Boards may determine that discharges from a facility or groups of facilities, otherwise eligible for coverage under this General Permit, have potential water quality impacts that may not be appropriately addressed by this General Permit. In such cases, a Regional Water Board may require such discharges to be covered by an individual or general NPDES permit. Interested persons may petition the appropriate Regional Water Board to issue individual NPDES permits. The applicability of this General Permit **to such discharges** will be terminated upon adoption of an individual NPDES permit or a different general NPDES permit.

Reply at 9; Docket No. 158-1 at 7-8 (emphasis added). Defendants' interpretation of the last sentence to mean that the general permit and individual permit are mutually exclusive ignores the bolded and underlined language that circumscribes the effect of termination of the general permit "to such discharges." See also Opp. at 11, n.5 ("And the separate claims under the two permits are important because, although there is overlap in what each permit requires, there are also differences in the permits' terms and conditions. See Dkt. 29 at 19.") Thus, there could be other discharges that do not appear in the individual permit that the general permit still

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-05600 GAF (MANx) | Date | November 21, 2014 |
|---|---|---|---|
| Title | Wishtoyo Foundation v. Magic Mountain LLC et al | | |

regulates. As the case progresses, the Court expects the parties to identify clearly any alleged violations that they contend are unique to the general permit.

The Court cannot avoid noting that Defendants' motion smacks of a *post hoc* legal strategy devised by their attorneys, which is inconsistent with Defendants' conduct before this lawsuit. The record before the Court plainly demonstrates that both the Board and Defendants have treated the facility as though it were covered by an individual permit and general permit since 1998. From 1998 into 2013, Defendants had not requested termination of the general permit. Defendants can hardly claim that it was unaware that both permits were in effect because, in 2010, the Regional Board sent a letter regarding noncompliance with the general permit to which Defendants responded without raising any objection to being covered by both. Comerford Decl., Ex. F; Docket No. 116-2. The Regional Board's April 2014 termination letter does not bat an eye at the facility's dual coverage. See April 7, 2014 Letter re Notice of Termination [Comerford Decl., Ex. B] ("[T]he facility has had continuous coverage under the individual NPDES Permit and its predecessors, Order Nos. R4-2005-0036 and R4-2008-0209, since 2005 and has been covered under the General Stormwater Permit since April 13, 1992.").

The Court takes seriously its responsibility to "afford generous leeway" to agencies' interpretations of their regulations, but Defendants' waving the "Chevron deference" flag does not help resolve the situation at hand. The regulating agencies have never addressed what to do when a facility voluntarily subjects itself to the general permit via a NOI, the Regional Board does nothing to contradict the NOI, and years go by in which the facility operates as if it were bound. One could argue with equal or greater force that the Court should defer to the Regional Board, which appears to have no problem with the fact that the facility was subject to both an individual and general permit simultaneously.

After construing the facts in the light most favorable to Plaintiffs, the Court will not undo the facility's documented history of assent to the general permit as a matter of law. The motion is **DENIED**. The hearing set for Monday, December 1, 2014 is **VACATED.**

**IT IS SO ORDERED**.