Kevin M. Cassidy (*pro hac vice*)
cassidy@lclark.edu
Allison M. LaPlante (*pro hac vice*)
laplante@lclark.edu (*pro hac vice*)
Lia C. Comerford (*pro hac vice*)
comerfordl@lclark.edu
**EARTHRISE LAW CENTER**
**LEWIS & CLARK LAW SCHOOL**
10015 SW Terwilliger Blvd.
Portland, OR  97219
Tel: (781) 659-1696 (Cassidy)
Tel: (503) 768-6892 (LaPlante)
Tel: (503) 768-6823 (Comerford)
Fax: (503) 768-6642

Daniel P. Mensher (*pro hac vice*)
dmensher@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Tel: (206) 623-1900, Fax (206) 623-3384

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WISHTOYO FOUNDATION, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>MAGIC MOUNTAIN LLC, ET AL.,<br><br>Defendants. | No. 2:12-cv-05600-GAF (MANx)<br><br>Hon. Margaret A. Nagle<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DOCUMENT PRODUCTION**<br><br>Date:        December 9, 2014<br>Time:        10:00 AM<br>Location:   Courtroom 580 |

1  Plaintiffs hereby submit the following Supplemental Memorandum in

2  support of Plaintiffs' Motion to Compel Defendants' Document Production.

3  **I.     Issue I: Kennedy/Jenks Documents**

4  Defendants claim that all documents and communications between

5  Defendants and their environmental consultant, Kennedy/Jenks—even those

6  where no attorney is included in the communication—are protected from

7  disclosure by the attorney-client privilege.[1]  Defendants argue that every such

8  document is protected because they relate to a "legal issue"—namely,

9  compliance with Defendants' NPDES permit.  But Defendants forget that one of

10  the essential elements of the attorney-client privilege is that the communications

11  must be made for the purpose of acquiring legal advice from an attorney. *See*

12  *Visa U.S.A., Inc. v. First Data Corp.*, 2004 WL 1878209, at *5 (N.D. Cal. 2004)

13  (emphasis added) (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir.

14  1961)); *see also* JS at 11–12. A critical factor in the analysis of third party

15  communications is whether the communication or document was ever sent to, or

16  reviewed by, an attorney.  *See MediaTek, Inc.*, 2013 WL 5594474 at *4 (N.D.

17  Cal. 2013).[2]

18  _____

[1] Hereafter, Plaintiffs will refer to these as "Kennedy/Jenks documents."
19  Plaintiffs' section of the supplemental memo discussing Issue 1 focuses on
20  Defendants' claims of attorney-client privilege over Kennedy/Jenks documents.
In focusing on the attorney-client privilege, Plaintiffs do not in any way alter or
21  waive any arguments made in their portion of the Joint Stipulation, including the
22  arguments related to the work product doctrine.
[2] Some courts have narrowly extended the attorney-client privilege to
23  communications with third-party consultants who interpret data or concepts for
24  the purpose of facilitating consultation between client and attorney. *See United
States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1071 (N.D. Cal. 2002)
25  (citing *U.S. v. Kovel*, 296 F.2d 918 (2nd Cir.1961)); *see also U.S. v. Judson,* 322
26  F.2d 460, 463 (9th Cir. 1962) (implicitly adopting *Kovel*).  But the privilege does
not apply where the consultant is "hired merely to give additional legal advice
27  about complying with the [law] even where doing so would assist the attorney in
28  advising the client." *Id.* at 1071–72.

1

1    Defendants here cannot show that the Kennedy/Jenks documents were

2   made for the purpose of obtaining legal advice from a lawyer.  Defendants

3   ground much of their argument on the fact that all Kennedy/Jenks documents

4   purportedly relate to "issues related to management of Defendants' Facility's

5   NPDES permit compliance requirements," issues which Defendants claim are

6   "purely legal in nature."  JS at 17, 19.  Whether the Kennedy/Jenks documents

7   are "legal in nature," of course, is a very different question than whether they

8   were made for the purpose of "obtaining legal advice from [a] lawyer."

9   Preparation of documents such as agency-required reports or plans may be

10   related to compliance with regulatory requirements.  But documents related to

11   compliance—especially without any related evidence of consultation with or

12   advice from attorneys—are not made for the purpose of seeking or giving legal

13   advice, and do not fall under the privilege's purview.  *See In re Grand Jury*

14   *Matter*, 147 F.R.D. 82, 85–86 (E.D. Pa. 1992) (documents not privileged when

15   they "were made solely in the course of [] expert consultant's preparation of a

16   waste management plan that would achieve regulatory compliance for the

17   company's waste disposal practices"); *Solis v. Milk Specialties Co.*, 854 F. Supp.

18   2d 629, 634 (E.D. Wis. 2012) (explaining that employing "an expert on []

19   regulations to determine how to come into compliance with them [is] simply

20   smart business," and does not by itself warrant attorney-client privilege).[3]

---

22   [3] Plaintiffs originally notified Defendants of a significant number of
Kenned/Jenks documents that did not appear to qualify for any privilege based

23   on Defendants' privilege logs, but Plaintiffs then narrowed those documents
down in an effort to make progress on the issue. Cassidy Dec., Ex. F at 5. In

24   narrowing down the documents, Plaintiffs removed documents that were sent to
or by attorneys. However, a "communication between individuals or clients [d]o

25   not become privileged by virtue of an attorney being copied or forwarded the

26   communication[.]" *Coleman v. Schwarzenegger,* 2008 WL 2468492, at *2 (E.D.

27   Cal. and N.D. Cal. 2008). Thus, to the extent that Defendants argue that
Kennedy/Jenks documents are privileged solely because an attorney was copied

28

2

Moreover, many of the Kennedy/Jenks documents provide underlying factual data. *See e.g.,* Cassidy Dec., Ex. B at 6 (identifying four Kennedy/Jenks documents as maps). The attorney-client privilege covers communications only, not the data underlying those communications. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Consequently, factual data such as maps and sample results are not protected by attorney-client privilege.

Defendants also argue that the attorney-client privilege applies because the consultant "was retained by Defendants' attorneys in 2005 for 'the sole purpose of assisting [Defendants'] attorneys in providing technical support in dispensing legal advice to Defendants.'" JS at 16. Defendants seek a ruling that would allow them to avoid production of discoverable documents simply by having counsel retain consultants on behalf of their clients, rather than have the clients retain consultants directly. This is clearly an improper attempt to take advantage of the attorney-client privilege. *See Cavallaro v. United States*, 284 F.3d 236, 247 (1st Cir. 2002) (explaining that placing a consultant on an attorney's "payroll, does not, by this action alone, render communications between the attorney's client and the [consultant] privileged").

Corporations regularly retain consulting firms like Kennedy/Jenks to help them meet obligations under various environmental statutes, including the Clean Water Act. Documents and communications related to these services are not protected under the attorney-client privilege, because such consulting firms are

---

on or forwarded the communication (and the document was not made for the purpose of seeking legal advice) such claims of privilege are invalid. Similarly, to the extent that Defendants argue that certain Kennedy/Jenks documents are privileged because they are attachments to privileged emails or other parent documents, such claims are invalid because each document itself must qualify as privileged, independently of its parent document. *See JS at 7, 12; see also* Cassidy Dec., Ex. F at 4 (Plaintiffs' letter explaining there is no blanket privilege for attachments to privileged parent documents).

3

not law firms: they help regulated entities comply with permit requirements, but are not lawyers providing legal advice. *See, e.g., In re Grand Jury Matter,* 147 F.R.D. at 85 ("if [certain withheld documents] were made simply in the course of providing environmental services by the expert consultant to the company, they are not protected"); *see also AVX Corp. v. Horry Land Co.*, 2010 WL 4884903, at *8–9 (D.S.C. Nov. 24, 2010) (documents created for purposes of providing environmental services by attorney-hired environmental consultants not protected by attorney-client privilege).

Defendants' attempt to cloak all of their communications with their consultants in perpetual privilege by having their attorneys, rather than Defendants themselves, be the entity that "hired" Kennedy/Jenks should be rejected. Defendants' own deposition testimony makes clear that Kennedy/Jenks is for all practical purposes employed by Defendants. *See* Dkt. 121-1 at 66, lines 3–5 (deposition transcript of Thomas Edgar, stating that "I've hired, through my attorney, Kennedy/Jenks to advise us on all aspects of our storm—of our water discharge.").[4] Further, Defendants' privilege logs, on their face, indicate that the services provided by Kennedy/Jenks are no different than the services regularly provided by environmental consultants in similar situations, *e.g.,* preparing reports required by state agencies. *See generally,* Cassidy Dec., Exs. B and J (Defendants' privilege logs, annotated by Plaintiffs).[5] These documents and communications would not be privileged under normal circumstances, and

---

[4] Until his recent tragic death, Thomas Edgar had been Director of Administration at the Magic Mountain Facility since the end of 2007.

[5] Since Plaintiffs transferred their portion of the Joint Stipulation to Defendants on October 15, 2014, Defendants have produced a privilege log amending entries on their earlier logs, including entries at issue in Plaintiffs' motion to compel. However, except for one revision, which added a lawyer as the author of a document (*see* Cassidy Dec., Ex. B at 53, entry SF 0057216-0057416), Defendants' amendments have no impact on Plaintiffs' legal arguments that the documents are not privileged.

4

1 Defendants cannot avoid production simply by directing the hiring process for

2 Kennedy/Jenks through Defendants' attorney's office. As such, this Court

3 should order Defendants to produce all responsive, non-privileged

4 Kennedy/Jenks documents to Plaintiffs.

5 **II.    Issue 2: Defendants' Internal Emails**

6         The parties are currently discussing the scope of a new search of

7 Defendants' emails, including discussions regarding the search terms to be used

8 and employees' emails to be searched. But Defendants have not produced any

9 additional internal emails to Plaintiffs. Defendants' proposal for their new search

10 is inadequate because it omits relevant search terms, as well as MMLLC and

11 SFINC employees whose emails should be searched. As such, while Plaintiffs

12 will continue working with Defendants to resolve this issue, Plaintiffs still

13 request a Court order requiring Defendants to produce all internal email

14 communications responsive to Plaintiffs' discovery requests. If the parties are

15 able to resolve this issue prior to the hearing,  Plaintiffs will notify the Court.

16 **III.    Conclusion**

17         Based on the this memorandum, Plaintiffs' portion of the Joint Stipulation,

18 the Declaration of Kevin Cassidy, and supporting evidence thereto, and any

19 hearing, Plaintiffs' respectfully request this Court grant their motion to compel.

20

21 **DATED** this 25th day of November, 2014.

22                           Respectfully submitted,
                          /s/  *Lia C. Comerford*
23                          Lia C. Comerford (*pro hac vice*)
                          Earthrise Law Center
24                          Lewis & Clark Law School
25                          10015 SW Terwilliger Blvd.
                          Portland, OR 97213
26                          Email: comerfordl@lclark.edu
27                          Telephone: (503) 768-6823
                             Attorney for All Plaintiffs
28                                      5

**CERTIFICATE OF SERVICE**

I certify that on November 25, 2014, on behalf of Plaintiffs Wishtoyo Foundation, Los Angeles Waterkeeper, and Friends of the Santa Clara River, I served the foregoing Plaintiffs' Supplemental Memorandum in Support of Plaintiffs' Motion to Compel Document Production with the Clerk of the Court using the CMECF system, which will send notification of such filing to the following:

**Jason Weiner, Tatiana Gaur, Daniel P. Mensher, Kevin M. Cassidy, and Allison M. LaPlante,** Attorneys for Plaintiffs.

**Steven Hoch, Sudhir L. Burgaard**, **Ryan McKim, and Hubert Lee,** Attorneys for Defendants

DATED this 25th day of November, 2014.

s/ *Lia C. Comerford*

Lia C. Comerford (*pro hac vice*)
Earthrise Law Center
Lewis & Clark Law School
10015 SW Terwilliger Blvd.
Portland, OR 97213
Email: comerfordl@lclark.edu
Telephone: (503) 768-6823

Attorney for All Plaintiffs