

Kevin M. Cassidy (*pro hac vice*)
cassidy@lclark.edu
Allison M. LaPlante (*pro hac vice*)
laplante@lclark.edu
Lia C. Comerford (*pro hac vice*)
comerfordl@lclark.edu
**EARTHRISE LAW CENTER**
**LEWIS & CLARK LAW SCHOOL**
10015 SW Terwilliger Blvd.
Portland, OR  97219
Tel: (781) 659-1696 (Cassidy)
Tel: (503) 768-6894 (LaPlante)
Tel: (503) 768-6823 (Comerford)
Fax: (503) 768-6642

Daniel P. Mensher (*pro hac vice*)
dmensher@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Tel: (206) 623-1900
Fax (206) 623-3384

**Attorneys for Plaintiffs**

**Additional Counsel Listed on Next Page**

**FILED**
CLERK, U.S. DISTRICT COURT

Mar 26, 2015

**CENTRAL DISTRICT OF CALIFORNIA**
BY: ____PMC____ DEPUTY

JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

WISHTOYO FOUNDATION, ET AL.,

Plaintiffs,

v.

MAGIC MOUNTAIN LLC, ET AL.,

Defendants.

Civil Case No.: CV12-05600-SVW-MAN

~~[PROPOSED]~~ CONSENT DECREE AND ~~[PROPOSED]~~ ORDER

(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq.)

[Proposed] Consent Decree       1       **2:12-CV-05600-SVW-MAN**

*Additional Counsel for Plaintiffs*

Jason Weiner (Bar No. 259264)
**General Counsel for Wishtoyo Foundation**
**and its Ventura Coastkeeper Program**
E-mail: jweiner.venturacoastkeeper@wishtoyo.org
3875-A Telegraph Rd. #423
Ventura, California 93003
Telephone: (805) 658-1120
Facsimile: (805) 258- 5135

Tatiana Gaur (Bar No. 246227)
**Senior Attorney for Los Angeles Waterkeeper**
E-mail: tgaur@lawaterkeeper.org
120 Broadway, Suite 105
Santa Monica, CA 90401
Telephone: (310) 394-6162
Facsimile: (310) 394-6178

*Counsel for Defendants*

Steven L. Hoch, Esq.
Sudhir L. Burgaard
Ryan McKim
Hubert Lee
Morris Polich & Purdy, LLP
1055 West Seventh Street
Twenty Fourth Floor
Los Angeles, CA  90017

## **CONSENT DECREE**

The following Consent Decree is entered into by and between Plaintiffs Wishtoyo Foundation and its Ventura Coastkeeper program, Los Angeles Waterkeeper, Friends of the Santa Clara River, and Defendants Magic Mountain, LLC and Six Flags Theme Parks, Inc. The entities entering into this Consent Decree are each an individual "Settling Party" and collectively "Settling Parties."

**WHEREAS**, the Wishtoyo Foundation is a 501(c)(3) non-profit public benefit grassroots corporation organized under the laws of the State of California. The Wishtoyo Foundation's mission is to preserve, protect and restore Chumash culture, the culture and history of coastal communities, cultural resources, and the environment;

**WHEREAS**, Ventura Coastkeeper is a program of the Wishtoyo Foundation. Ventura Coastkeeper's mission is to protect, preserve, and restore the ecological integrity and water quality of Ventura County's inland water bodies, coastal waters and watersheds;

**WHEREAS**, Los Angeles Waterkeeper ("Waterkeeper") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California.

**WHEREAS**, Waterkeeper is dedicated to the preservation, protection and defense of the rivers, creeks and coastal waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Friends of the Santa Clara River ("FSCR") is a 501(c)(3) non-profit, public interest organization formed in 1993 dedicated to the protection, enhancement and management of the resources of the Santa Clara River;

**WHEREAS**, the Wishtoyo Foundation, Ventura Coastkeeper, Waterkeeper, and FSCR are collectively referred to herein as "Plaintiffs";

**WHEREAS**, the approximately 260-acre Magic Mountain amusement park facility is located at 26101 Magic Mountain Parkway in Valencia, California (hereinafter "Facility");

**WHEREAS**, the Magic Mountain Facility is owned and/or operated by Magic Mountain, LLC, which is a direct subsidiary of Six Flags Theme Parks, Inc. (hereinafter together "Defendants");

**WHEREAS**, as part of its operations, the Facility discharges wastewater and stormwater into the Santa Clara River;

**WHEREAS**, the Facility's discharges are authorized and governed by National Pollutant Discharge Elimination System ("NPDES") Permit No. CA0003352, Order No. R4-2011-0029 ("Individual Permit") and, the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, et seq. ("Clean Water Act" or "CWA"), Sections 301(a) and 402(a)-(d), (e), (i)-(k), and (o), 33 U.S.C. §§ 1311(a), 1342(a)-(d), (e), (i)-(k), and (o);

**WHEREAS**, Defendants' Individual Permit includes any renewals, reissuances or issuances of that permit that occur during the life of the Consent Decree;

**WHEREAS**, on April 20, 2012, Plaintiffs served Defendants with a 60-day notice of intent to sue letter ("Notice Letter"), with copies to the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the Regional Water Quality Control Board ("Regional Board"), stating their intent to file suit for violations of the Clean Water Act. The Notice Letter alleged violations of the Clean Water Act for Defendants' discharges of pollutants into the Santa Clara River in violation of their Individual Permit and California's General Permit for Discharges of Storm Water Associated with Industrial Activities, NPDES General Permit No. CAS000001, State Water Resources Board Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Stormwater Permit");

**WHEREAS**, on June 27, 2012, Plaintiffs filed a complaint under section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), against Defendants and other entities since dismissed in the United States District Court, Central District of California (Case No. 2:12-cv-05600-SVW-MAN) entitled *Wishtoyo Foundation, et al. v. Magic Mountain, LLC, et al.*, ("Complaint");

**WHEREAS**, Defendants deny they have violated or are violating the Clean Water Act, and deny all allegations in the Complaint;

**WHEREAS**, the Settling Parties agree that it is in the Parties' mutual interests to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, it is the express purpose of the Parties entering into this Consent Decree to protect and enhance the water quality of the Santa Clara River, further the objectives set forth in the Clean Water Act and to resolve those issues alleged by the Plaintiffs in their Complaint;

**NOW, THEREFORE**, without the trial of any issue of fact or law, upon consent of the Settling Parties, and upon consideration of the mutual promises contained herein,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS**:

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2.     Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the Facility where the alleged violations took place is located within this District;

3.     The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.     Plaintiffs have standing to bring this action;

5.     Until this Consent Decree is terminated pursuant to paragraphs 40–43, below, this Court shall retain jurisdiction over this matter for the purposes enabling the Settling Parties to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Consent Decree and any future modifications agreed to in writing by

the Settling Parties, including, but not limited to, termination of this Consent Decree, and/or for granting any further relief as applicable law may require and for as long as it is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I. OBJECTIVES

6.      It is the express purpose of the Settling Parties to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq*., and to resolve those issues alleged by Plaintiffs in their Complaint. In light of these objectives and as set forth fully below, Defendants agree, *inter alia*, to comply with the provisions of this Consent Decree and to comply with the requirements of the Individual Permit with respect to stormwater discharges, including pollution control and treatment technology and Best Management Practices ("BMPs"), which must be designed, implemented, operated, and managed to prevent non-permitted discharges and to reduce contamination in stormwater discharged from the Facility sufficient to comply with all terms and conditions of the Facility's Individual Permit, including numeric effluent limitations (presently contained in Section IV of the Individual Permit), and all terms and conditions of any future renewals, reissuances or issuances of the Individual Permit during the life of this Consent Decree.

## II. COMMITMENTS OF THE PARTIES

### A. Compliance with Facility's Individual Permit for Stormwater Discharges

7.      Defendants shall comply with the Individual Permit, including numeric effluent limitations (presently contained in Section IV of the Individual Permit) for all stormwater discharges from the Facility's Discharge Points 001, 002 and 003.

8.      In order to demonstrate compliance with the Consent Decree, Defendants must show four consecutive Stormwater Samples, as that term is defined below in paragraphs 17-21, that do not exceed any numeric effluent limitations in the Individual Permit (presently contained in Section IV of the Individual Permit).  If Defendants show four consecutive Stormwater Samples without exceedances of the numeric effluent limitations described above, and if Defendants have met all other obligations of the Consent Decree, the Defendants shall move the Court to terminate the Consent Decree as set forth in paragraphs 40–44 of this Consent Decree.

9.      If, by December 31, 2017, as a result solely of lack of sufficient rainfall and resultant stormwater runoff to sample, Defendants have not shown four consecutive Stormwater Samples, as that term is defined below in paragraphs 17-21, without any exceedances of the Individual Permit's numeric effluent limitations (presently contained in Section IV of the Individual Permit), the Settling Parties shall confer by January 31, 2018, regarding the status of the Consent Decree, including, but not limited to, the possibility of extending the time to show compliance by an additional year.  If the Parties' conferral does not result in an agreement in writing to amend this Consent Decree in order to take a different course of action to achieve compliance, Defendants shall, within 30 days of the conferral, initiate the process of designing and installing an

on-site infiltration basin/gallery that would be operated to retain, manage and infiltrate stormwater runoff from the entire facility, generated from a 85th percentile 24-hour rainfall event (1.06 inches of rain in a 24-hour period), as further described in paragraphs 11-14 herein.

10.     If, by December 31, 2017, Defendants have collected at least four Stormwater Samples, as that term is defined below in paragraphs 17-21, and Defendants have not shown four consecutive samples without any exceedances of the Individual Permit's numeric effluent limitations, the Parties shall confer by January 31, 2018, regarding the status of the Consent Decree.  If the Parties' conferral does not result in an agreement in writing to amend this Consent Decree in order to take a different course of action to achieve compliance, Defendants shall, within 30 days of the conferral, initiate the process of designing and installing an on-site infiltration basin/gallery that would be operated to retain, manage and infiltrate stormwater runoff from the entire facility, generated from a 85th percentile 24-hour rainfall event (1.06 inches of rain in a 24-hour period), as further described in paragraphs 11-14 herein.

11.     Within 180 days of the requirement to install an on-site infiltration basin/gallery being triggered by this Consent Decree as described in paragraphs 9 and 10 above, Defendants shall submit a proposal for the on-site infiltration basin/gallery ("Infiltration Plan") to the appropriate California Regional Water Quality Control Board and any other local, state or federal regulatory agency necessary for approval for the infiltration basin/gallery project.

12.     Defendants shall work with Plaintiffs, Plaintiffs' experts, and Plaintiffs' counsel, as described in paragraphs 13 and 14 of this Consent Decree, to ensure the best chance for approval by regulatory authorities for the Infiltration Plan.

13.     At least 90 days prior to submitting a proposal to any state regulatory agency from which approval will be required for the on-site infiltration basin/gallery, Defendants shall provide Plaintiffs an Infiltration Plan for the design, installation, operation, and maintenance of the infiltration basin/gallery, that includes procedures for ensuring that the infiltration basin is designed for and maintains sufficient capacity for retaining and infiltrating the volume of stormwater runoff from the entire Facility generated from a 85th percentile 24-hour rainfall event. The Infiltration Plan shall also ensure that accumulated sediment in the infiltration basin containing metals and other contaminants is disposed of and tracked in accordance with all local, state, and federal regulations if necessary.

14.     Plaintiffs shall provide comments on Defendants' Infiltration Plan no later than 45 days after receipt of the Infiltration Plan.  Defendants shall consider Plaintiffs' and Plaintiffs' experts' comments in good faith and incorporate them into the Infiltration Plan as Defendants deem appropriate and to ensure adequacy of the Infiltration Plan. Defendants also shall facilitate, at Plaintiffs' request and after Defendants have received Plaintiffs' comments on the Infiltration Plan but before it is submitted to regulatory authorities for approval, a conferral between Defendants' consultants responsible for the Infiltration Plan and Plaintiffs' experts to discuss ways to ensure approval of the

Infiltration Plan.  Finally, Defendants shall notify Plaintiffs no later than 48 hours in advance of any non-public meetings between Defendants and regulatory authorities responsible for Infiltration Plan approval, and Defendants agree that up to a total of three Plaintiffs' representatives (including an attorney) or consultants may be present for and participate in any such meetings.

15.    Nothing in this Consent Decree prevents Defendants from installing, prior to December 31, 2017, an on-site infiltration basin/gallery that would be operated to retain, manage and infiltrate stormwater runoff from the entire Facility, generated from the 85th percentile 24-hour rainfall event (1.06 inches of rain in a 24-hour period), so long as Defendants do so in accordance with paragraphs 12–14 above.

16.    In the event that, despite the Settling Parties' best efforts, the infiltration basin/gallery is not approved by the necessary regulatory agencies, Defendants will, within 30 days of disapproval of the Infiltration Plan meet and confer with Plaintiffs regarding stormwater operational and structural controls, and pollutant recovery and treatment options that Defendants have not yet tried, which Defendants shall employ at the Facility during the remaining life of this Consent Decree.

**B.    Stormwater Sampling and Monitoring at the Facility**

17.    Defendants shall collect stormwater samples from all of the Facility's Discharge Points during Qualifying Storm Events ("QSE") (hereinafter "Stormwater Samples").  For the purpose of this Consent Decree, QSEs are defined as a precipitation event:  (1) that produces a discharge from at least one of the Facility's discharge points

(001, 002, or 003 as those points are defined in the Individual Permit); (2) that is preceded by 48 hours with no discharge from any of the Facility's discharge points; and (3) during which at least 0.25 inches of rain has fallen in a 24-hour period, as determined by the Facility's on-site rain gauge, located at 34°25'38.8"N 118°35'55.8"W.  If, for any reason, Defendants' on-site rain gauge malfunctions or is off-line for repair or replacement, the Settling Parties agree that hourly rainfall data from 1012Z  Castaic Junction (ALERT ID# 385) rain gauge, operated by the Los Angeles County Department of Public Works, shall be used to determine if a QSE has occurred.  Defendants will notify Plaintiffs within 24 hours of when they become aware that the Facility's on-site rain gauge is not functioning properly or off-line, or if Defendants decide to change the current location, type and/or model of rain gauge.

18.     Defendants agree to provide Plaintiffs, via email, with photo documentation of the QSE stormwater discharges along with data documenting the flow rate of the discharge.  As of the Effective Date, the Facility has three Discharge Points identified in its Individual Permit (001, 002, 003).  If Defendants make engineering changes that cease all discharges from any of the Discharge Points, Defendants shall notify Plaintiffs of those changes and, within 10 days of implementing the changes, provide Plaintiffs with design and engineering plans demonstrating such Discharge Points will no longer be used.

19.     Defendants shall take any Stormwater Sample within the first four hours of a QSE, or within the first hour of the Facility's operating hours if the QSE began during the

last 12 hours prior to the start of the Facility's operating hours.  The Facility's operating hours are defined to mean 7:00 a.m. to 7:00 p.m. Monday through Sunday.  Defendants agree to provide Plaintiffs with rainfall data from their on-site rain gauge on a weekly basis (via email) during any rainy seasons (defined for the purpose of this Consent Decree as October 1 through May 31) for which this Consent Decree is in effect.

20.    Defendants shall collect Stormwater Samples using all appropriate Quality Assurance and Quality Control ("QA/QC") procedures, and send the samples to a state-certified laboratory for analysis.  For all Discharge Points, Defendants shall analyze Stormwater Samples for all constituents with numeric effluent limitations in the Individual Permit (presently contained in Section IV of the Individual Permit) as well as for total zinc, iron and aluminum.  Defendants shall provide the results of the samples' analysis to Plaintiffs (via email) within five days of receiving the results.  Plaintiffs shall provide confirmation to Defendants upon receipt of the sample results.

21.    Defendants shall begin taking Stormwater Samples during the first QSE after the Effective Date.

22.    Defendants shall conduct annually during the life of the Consent Decree Whole Effluent Toxicity ("WET") sampling and analysis on one Stormwater Sample collected during a QSE.  Defendants shall take the Stormwater Sample taken for purposes of WET analysis pursuant to the sample collection procedures set forth in paragraphs 17–20 above.  Defendants shall provide the results of the WET analysis to Plaintiffs (via

email) within five days of receiving the results.  Plaintiffs shall provide confirmation to Defendants of receiving the sample results.

### C.    Trash Best Management Practices

23.    Defendants shall develop and implement a Facility Trash Management Plan that includes, in addition to all Trash Best Management Practices ("Trash BMPs") currently employed at the Facility, at a minimum, the following:

a.    Defendants shall enclose their trash sorting and compactor with a 10-foot chain link fence with gates that will be kept closed except when trash compacting area in active use.  The entire chain link fence shall be covered with 90% windscreen. Defendants shall implement BMPs the goal of which is to prevent trash from the sorting and compacting operation from discharging into storm drains or being windblown into channels leading to the Santa Clara River;

b.    In addition to routinely and regularly emptying trash containers during the day, Defendants shall empty all trash containers just prior to closing the Facility on days that the Facility is open to paying guests, so that all trash containers are empty over night;

c.    Defendants shall continue to employ an individual who is charged with walking the fence line and picking up trash each day the Facility is open to paying guests;

d.    Defendants shall continue to provide basic training to all its employees regarding its trash pickup policy and other Trash BMPs;

e.      Defendants shall continue to maintain rewards programs for employees who promote cleanliness at the Facility by picking up trash and employing Trash BMPs;

f.      Defendants shall continue to employ an individual who is charged with cleaning the storm drains and storm channels four days a week;

g.      Defendants shall continue to use a PM 10-efficient sweeper to sweep the entire Facility, including parking lot areas, each day paying guests are present at the Facility and prior to any expected storms;

h.      Defendants shall continue to maintain nets at discharge points 001 and 003 to capture trash particles before they are washed into the storm drain system, and should preventative Trash BMPs prove to be ineffective, then Defendants will consider installing and maintaining inserts in all Facility stormwater drains designed to pick up trash particles, to determine their practicality and efficiency, and, at a minimum, Defendants will install and maintain inserts in agreed upon Facility stormwater drains to be determined by the Settling Parties after the first Annual site visit;

i.      Within 30 days of the Effective Date, Defendants shall provide Plaintiffs with their written Trash Management Plan documenting all of their current Trash BMPs as well as all of the requirements related to trash in this Consent Decree. Defendants shall incorporate the Trash Management Plan in the next update of the Facility's Storm Water Pollution Prevention Plan to the extent that it is not already incorporated, in whole or in part, in said Storm Water Pollution Prevention Plan.

j.     If trash emanating from the Facility is observed and photo/video documented by Defendants or Plaintiffs (during an Annual Site Inspection or during a rain event) in stormwater discharge from the Facility's Discharge Points (001, 002, or 003 as those points are defined in the Individual Permit), Defendants shall confer in good faith, within 30 days following notice to the other party of the observation, with Plaintiffs to determine the need to either install and maintain additional trash recovery devices and/or effective end-of-pipe net traps designed to prevent the discharge of trash from the Facility in stormwater or create/modify BMPs to prevent such incidents from occurring. Should no resolution be forthcoming from this process, the matter will be subject to Dispute Resolution.

### D.     Plaintiffs' Compliance Monitoring

24.     Defendants shall make a payment of $7,500 to Los Angeles Waterkeeper and a payment of $7,500 to Wishtoyo Foundation within 30 days of the Effective Date to cover Plaintiffs' costs associated with Plaintiffs' Compliance Monitoring during the duration of this Consent Decree. The payments shall be mailed via certified mail or overnight delivery to the attention of contacts for Los Angeles Waterkeeper and Wishtoyo Foundation, as set forth below in paragraph 60.

25.     <u>Annual Site Inspections</u>. Every year during the life of this Consent Decree up to a total of three Plaintiffs' representatives (including an attorney) or consultants may conduct one Wet Season (October 1 through May 31) site inspection and one Dry Season site inspection (June 1 through September 30) at the Facility.

26.     Site inspections shall occur between 7:00 am and 7:00 pm on any day of the week and Plaintiffs shall provide Defendants with as much notice as possible, but at least 24 hours notice prior to a Wet Season site inspection, and seven days notice prior to a Dry Season site inspection. Plaintiffs shall provide notice by telephone and electronic mail.

27.     During the site inspection, Defendants shall allow Plaintiffs and/or their representatives access to the Facility's Stormwater Pollution Prevention Plan ("SWPPP"), Monitoring and Reporting Plan ("M&RP"), stormwater monitoring records, and to all stormwater monitoring reports and data for the Facility.  Plaintiffs also shall be allowed to visit all of the Facility's Discharge Points, so long as Defendants believe it is safe to do so, as well as the locations of any BMPs implemented at the Facility.  Defendants' determination of safe or unsafe conditions must be reasonable and made in good faith. If Defendants determine it is not safe to visit the Facility's Discharge Points, Defendants will arrange for Plaintiffs' representatives to observe the Discharge Points from the safest vantage point available.  During the Wet Season site inspection, Plaintiffs and/or their representatives may obtain from Defendants' representative split samples of stormwater discharges from the Facility's Discharge Points, and Plaintiffs' representative(s) may observe the split sample(s) being collected by Defendants' representative. Any split samples collected during site inspections will be collected at Plaintiffs' request and direction.

28.     If Plaintiffs' representative notices a QA/QC issue with the sample-taking procedure at the time it is being taken, and if the representative immediately notifies Defendants, then Defendants will immediately take an additional sample at Plaintiffs' request, correcting for the issue raised by Plaintiffs' representative.  Once the sample is collected, Defendants will transfer custody of the sample, with an appropriate chain of custody form, to Plaintiffs' representative, who will then be responsible for delivering the sample to a certified laboratory.  Plaintiffs shall provide Defendants copies of their split sample results as well as all laboratory back up and chain of custody documentation within 10 days of receiving the sample results.

29.     Plaintiffs may take photographs or video recordings during any site inspection pursuant to this Consent Decree.  However, Plaintiffs shall not intentionally video or audio record any comment(s) by any employee of Defendants without the express permission of Defendants.  If Plaintiffs take photographs and/or video recordings, Plaintiffs shall provide Defendants with all the unedited photographs and/or video recordings within 14 days of the taking and recording of any such photographs and/or videos.

30.     All individuals who will participate in any site inspections shall execute a waiver and release prior to the site inspection in the form attached as Exhibit A hereto.  All individuals participating in any site inspections shall sign a sign-in sheet upon arrival at the Facility.

31.     Split samples obtained by Plaintiffs and/or their representatives during Site Inspections shall be considered Stormwater Samples for the Facility under and for the purpose of determining compliance with this Consent Decree, so long as the samples are taken pursuant to paragraphs 17–20 above.  Only Defendants' sample results may be used for determining compliance with the Individual Permit.  If a dispute arises as to the Plaintiffs' or Defendants' split sample results, such dispute shall be resolved pursuant to the Dispute Resolution provisions, paragraphs 47–50, in this Consent Decree.

32.     Data Reporting.  During the life of this Consent Decree, Defendants shall provide Plaintiffs with a copy of all Consent Decree and Individual Permit compliance and monitoring data, including inspection reports, on a quarterly basis, beginning 90 days after the Effective Date.

33.     Document Provision. During the life of this Consent Decree, Defendants shall copy Plaintiffs on all documents and communications solely in relation to stormwater runoff at the Facility that are submitted to the Regional Board, the State Board, and/or any State agency, local agency, county, or municipality. Such documents and communications shall be provided to Plaintiffs concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to water quality received by Defendants from any regulatory agency, State or local agency, county, or municipality shall be provided to Plaintiffs within 14 days of receipt by Defendants.  Notwithstanding paragraph 60 below, Defendants are not required to copy or provide documentation referenced in this paragraph to Plaintiffs' outside counsel (Earthrise Law Center).

### E.   Environmental Project, Reimbursement of Litigation Fees and Costs, and Stipulated Penalties

34.   <u>Environmental Project</u>. Defendants shall make a payment of $300,000.00 within 20 days of the Effective Date to the Rose Foundation for Communities and the Environment for a project designed to analyze, reduce, prevent, or otherwise mitigate the effects of polluted stormwater and/or non-stormwater discharges into the Santa Clara River. The payment shall be mailed via certified mail or overnight delivery to the attention of Tim Little, Executive Director, Rose Foundation, at 1970 Broadway, Suite 600, Oakland, California 94612-2218. Defendants shall provide Plaintiffs, via electronic mail, with proof of the payment at the time it is made.

35.   Plaintiffs will provide Defendants, via electronic mail, documentation of the projects for which the Rose Foundation is using the payment and, to the extent feasible, the amounts allocated to each project within 20 days of Plaintiffs receiving such documentation from the Rose Foundation.

36.   <u>Reimbursement of Plaintiffs' Fees and Costs</u>. Defendants shall partially reimburse Plaintiffs for their investigation fees and costs, consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter in an amount totaling $1,285,000.00. All such payments shall be made within 20 days of the Effective Date and shall be made payable to Earthrise Law Center, addressed to Allison LaPlante, Earthrise

Law Center at Lewis and Clark Law School, 10015 SW Terwilliger Blvd., Portland, Oregon 97219, and sent via certified mail or overnight delivery.

    37.   <u>Waiver and Stipulated Penalties</u>.

        a.    Plaintiffs agree to waive any Clean Water Act claims they may have involving the Facility's discharges that may have arisen prior to the Effective Date of the Consent Decree, as well as any Clean Water Act claims they may have involving the Facility's stormwater discharges that may arise during the life of this Consent Decree except as set forth herein.

        b.    Defendants shall make a remediation payment of $3,000 ("Stipulated Penalty") for each exceedance of any numeric effluent limitation in the Facility's Individual Permit (presently contained in Section IV of the Individual Permit), except that this Stipulated Penalty provision shall not apply during the first year of this Consent Decree.

        c.    Any Stipulated Penalties paid shall be used for a project designed to analyze, reduce, prevent, or otherwise mitigate the effects of polluted stormwater and/or non-stormwater discharges into the Santa Clara River and shall be made to the Rose Foundation for Communities and the Environment, and mailed via certified mail or overnight delivery to Tim Little, Executive Director, Rose Foundation at 1970 Broadway, Suite 600, Oakland, California 94612-2218.

        d.    Defendants shall pay the Stipulated Penalties within 20 days of receiving the analysis of a Stormwater Sample that shows a violation of the Facility's

Individual Permit numeric effluent limitations. Defendants shall provide Plaintiffs, via electronic mail, with proof of each payment at the time it is made.

38.     <u>Interest Payments</u>.  In the event of late payment of any of the sums due under this Consent Decree, Defendants shall pay interest to Plaintiffs, if the sum is owed pursuant to paragraphs 24 or 36, or to the Rose Foundation for Communities and the Environment, if the sum is owed pursuant to paragraphs 34 or 37, and interest shall accrue daily from the first day past the date the sum was due until the date Defendants tender payment.  The interest rate, as specified in 28 U.S.C. 1961, shall apply.  All such interest payments to the Plaintiffs shall be made payable to Earthrise Law Center, addressed to Allison LaPlante, Earthrise Law Center at Lewis and Clark Law School, 10015 SW Terwilliger Blvd., Portland, Oregon 97219, and sent via certified mail or overnight delivery.

## III.    EFFECTIVE DATE AND TERMINATION DATE

39.     The term "Effective Date," as used in this Consent Decree, shall mean the date the Court enters the final Consent Decree.

40.     This Consent Decree shall terminate five years from the Effective Date provided that Defendants have demonstrated compliance with the requirements of this Consent Decree and unless there is an ongoing, unresolved dispute regarding Defendants' compliance with the Consent Decree's provisions.

41.     The Consent Decree may terminate early in the event that the following conditions are satisfied:

a.    Defendants have implemented all of the measures described in the Facility Trash Management Plan as detailed in paragraph 23 of this Consent Decree;

b.    Four consecutive Stormwater Samples from all Discharge Points at the Facility, as detailed and defined in paragraphs 17–21 of this Consent Decree, do not exceed the numeric effluent limitations in the Individual Permit (presently contained in Section IV of the Individual Permit);

c.    All payments required under paragraphs 24, 34, 36, 37, and 38 of this Consent Decree are made; and

d.    There are no outstanding disputes regarding the provisions of this Consent Decree, including, but not limited to, disputes related to the payment of fees/costs, Environmental Project and compliance monitoring payments, implementation of the Facility Trash Management Plan, and compliance with all terms and conditions of the Individual Permit.

42.    The Consent Decree also may terminate early if Defendants install an infiltration basin/gallery capable of retaining, managing and infiltrating stormwater runoff from the entire facility, generated from a 85th percentile 24-hour rainfall event (1.06 inches of rainfall in a 24-hour period), such infiltration basin/gallery has received all necessary regulatory approvals, it meets the Consent Decree Infiltration Plan requirements in paragraphs 11–14, it is fully operational, and the requirements in paragraph 41, sub-paragraphs a, c, and d have been met.

43.    To terminate early as provided by paragraphs 41 and 42 above, Defendants shall file a motion for termination with the Court.  Defendants shall provide Plaintiffs and their counsel with written notice at least 30 days prior to filing any motion for termination of the Consent Decree.

44.    Plaintiffs may conduct an inspection of the Facility during the 30 days following any motion for termination of the Consent Decree, or during the 30 days prior to termination under paragraph 40. Defendants will work with Plaintiffs to schedule and accommodate the inspection, if requested, within the 30-day period. The inspection shall be conducted according to the rules applicable to dry weather Annual Site Inspections in paragraphs 25–31 of this Consent Decree.

**IV.    Entry of Consent Decree**

45.    Within three days of the final signatures of the Parties, Plaintiffs shall lodge the executed Consent Decree with the Court and submit it to the U.S. Department of Justice and U.S. Environmental Protection Agency for review consistent with 40 C.F.R. § 135.5. The federal government review period expires 45 days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendants. In the event that the federal government objects to entry of this Consent Decree, the Parties shall meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

46.    Within five days of receiving notice from the federal government of its intent not to object or intervene or when the 45-day review period expires, whichever

1
2
occurs first, the Settling Parties shall submit a joint motion to the Court seeking entry of the Consent Decree.

3
**V.    DISPUTE RESOLUTION**

4
5
6
7
8
9
47.    This Court shall retain jurisdiction over this matter for the purposes of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, including, but not limited to, interpretation of, compliance with, and modification of Consent Decree terms. The Court shall have the power to enforce this Consent Decree, notwithstanding paragraph 37 above, with all available legal and equitable remedies, including contempt.

10
11
12
13
14
15
48.    <u>Meet and Confer</u>. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Parties in writing of the matter(s) in dispute and of the party's proposal to resolve the dispute under this Section. The Parties shall then meet and confer in an attempt to resolve the dispute no later than 14 days from the date of the notice. The Parties have 14 days from the date on which they meet and confer to resolve the dispute.

16
17
18
19
20
49.    If the Parties cannot resolve a dispute by the end of the meet and confer period, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Parties shall jointly apply to the Court for an expedited hearing schedule on the motion.

21

50.    Litigation costs and fees incurred due to motions practice before this Court to enforce the Consent Decree or address an alleged breach of this Consent Decree as described in paragraph 49 herein, may be awarded at the Court's discretion to any of the Settling Parties in accordance with the standard established by the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and case law interpreting that standard.

## VI.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

51.    In consideration of the above, upon the Effective Date of this Consent Decree, the Parties hereby fully release, except for claims for the Defendants' failure to comply with this Consent Decree and as expressly provided below, each other and their respective successors, assigns, officers, agents, employees, boards of directors, and all persons, firms and corporations having an interest in them, from any and all alleged Clean Water Act violations claimed in the Complaint, up to and including the Effective Date of this Consent Decree.

52.    Nothing in this Consent Decree limits or otherwise affects the Plaintiffs' right to address or take any position that they deem necessary or appropriate in any formal or informal proceeding before the Regional Board, State Board, EPA, or any other judicial or administrative body on any other matter relating to the Facility.

53.    Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law,

rule, or regulation. Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

54.   Force Majeure. Defendants shall notify Plaintiffs pursuant to the terms of this paragraph, when timely implementation of the requirements set forth in this Consent Decree becomes impossible, despite the timely good-faith efforts of Defendants, due to circumstances beyond the reasonable control of Defendants or their agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendants.  In no circumstances shall a claim of inability to pay be considered Force Majeure.

a.      If Defendants claims impossibility, they shall notify Plaintiffs in writing within 21 days of the date that Defendants first knew of the event or circumstance that caused or would cause a violation of this Consent Decree. The notice shall describe the reason for the nonperformance and specifically refer to this Section. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendants to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance. Defendants shall adopt all reasonable measures to avoid and minimize such delays.

b.      The Parties shall meet and confer in good-faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of Defendants, due to circumstances beyond the control of

Defendants that could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendants, the Parties will establish new deadlines consistent with the intent of this Consent Decree.

        c.     If Plaintiffs disagree with Defendants' notice, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the Dispute Resolution Procedure pursuant to Section V above. In such proceeding, Defendants shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

**VII.   MISCELLANEOUS PROVISIONS**

    55.   <u>Facility Changes</u>. Any changes in the Facility's layout, stormwater management, outfalls, maintenance areas, bone yards, or any other structures reference in this Consent Decree shall not relieve Defendants of their obligations in this Consent Decree, unless explicitly agreed to in writing by Plaintiffs.

    56.   <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Individual Permit, the Clean Water Act, or specifically herein.

    57.   <u>Mutual Drafting and Construction</u>. It is hereby expressly understood and agreed that the Settling Parties jointly drafted this Consent Decree. Accordingly, the Parties hereby agree that any and all rules of construction to the effect that ambiguity is

construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this Consent Decree.

58.   Choice of Law. The laws of the United States shall govern this Consent Decree.

59.   Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

60.   Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be in writing via first class mail and electronic mail, as follows:

If to Plaintiffs:

Jason Weiner
General Counsel
Wishtoyo Foundation / Ventura Coastkeeper
3875-A Telegraph Road #423
Ventura, CA 93003
E-mail: jweiner.venturacoastkeeper@wishtoyo.org

Tatiana Gaur
Senior Attorney
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, CA 90401
E-mail: tgaur@lawaterkeeper.org

Kevin Cassidy
Earthrise Law Center
P.O. Box 445
Norwell, MA 02061
Email:  cassidy@lclark.edu

Allison LaPlante
Earthrise Law Center
Lewis & Clark Law School
10015 SW Terwilliger Blvd.
Portland, OR  97219
Email:  laplante@lclark.edu

If to Defendants:

Amanda Goedike
Six Flags Magic Mountain & Hurricane Harbor
Safety and Risk Manager
26101 Magic Mountain Pkwy.
Valencia, CA 91350
aGoedike@sftp.com

Danielle Bernthall
Assistant General Counsel
Six Flags Entertainment Corporation
230 Park Avenue, 16th Floor
New York, NY 10169
230 Park Avenue, 16th Floor
New York, NY 10169

Steven L. Hoch, Esq.
Morris Polich & Purdy, LLP
1055 West Seventh Street
Twenty Fourth Floor
Los Angeles, CA  90017
Email: SHoch@mpplaw.com

Notifications of communications shall be deemed submitted three days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

61. <u>Effect of Consent Decree</u>. Plaintiffs do not, by their agreement to this Consent Decree, warrant or aver in any manner that Defendants' compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Defendants to comply with all federal, state, and local laws and regulations governing any activity referenced in this Consent Decree.

62. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, electronic copies, PDF'd signatures sent via email, and/or facsimile copies of original signatures shall be deemed to be originally executed counterparts of this Consent Decree.

63. <u>Modification of the Consent Decree</u>. Upon its entry by the Court, this Consent Decree shall have the force and effect of a final judgment. This Consent Decree, and any provisions herein, may not be changed, waived, or discharged, unless by a written instrument, signed by all Settling Parties. Approval by the Court of any changes is required only if a modification materially changes the terms of this Consent Decree or materially affects Defendants' ability to meet the requirements or objectives of this Consent Decree.

64. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

65. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree, along with any attachments incorporated into the Consent Decree by reference, is

intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

66.     <u>Authority</u>. The undersigned representatives for the Settling Parties each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

67.     The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. The obligations created in this Consent Decree are enforceable by this Court at the request of either Party. The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

68.     The Parties shall be bound by this Consent Decree and will not contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, Defendants do not admit liability for any purpose as to any allegation or matter arising out of this Action.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the latest date of the signatures below.

1 | APPROVED AS TO CONTENT

2 | Dated: January 23, 2015

3 | LOS ANGELES WATERKEEPER

4 |

5 | Liz Crosson, Executive Director

6 |

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

[Proposed] Consent Decree          33          2:12-CV-05600-SVW-MAN

1  APPROVED AS TO CONTENT

2  Dated: January 23, 2015

3  WISHTOYO FOUNDATION and VENTURA COASTKEEPER

4

5  Mati Waiya, Executive Director

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

APPROVED AS TO CONTENT

Dated: January 23 2015

FRIENDS OF THE SANTA CLARA RIVER

*Ron Bottorff*

Ron Bottorff, Executive Director

1  APPROVED AS TO CONTENT

2  Dated: January 23, 2015

3  MAGIC MOUNTAIN, LLC,

4  _____

5  Bonnie Rabjohn
   President
6  Six Flags Magic Mountain & Hurricane Harbor

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

1 | APPROVED AS TO CONTENT

2 | Dated: January 23, 2015

3 | SIX FLAGS THEME PARKS, Inc.

4 |

5 | Walter Hawrylak

6 |

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

[Proposed] Consent Decree                37                2:12-CV-05600-SVW-MAN

APPROVED AS TO FORM

Dated: January 22, 2015

MORRIS, POLICH, & PURDY, LLP.



Steven Hoch

Attorney for Defendants

[Proposed] Consent Decree                38                2:12-CV-05600-SVW-MAN

1  APPROVED AS TO FORM

2  Dated: January 23 , 2015

3  WISHTOYO FOUNDATION AND VENTURA COASTKEEPER

4

5  Jason Weiner

6  General Counsel for Wishtoyo Foundation and Ventura Coastkeeper

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

[Proposed] Consent Decree                39            2:12-CV-05600-SVW-MAN

1    APPROVED AS TO FORM

2    Dated: January 23, 2015

3    LOS ANGELES WATERKEEPER

4    *Tatiana K. Gaur*

5    Tatiana Gaur

6    Senior Attorney for Los Angeles Waterkeeper

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

APPROVED AS TO FORM

Dated: January 23, 2015

EARTHRISE LAW CENTER

_____
Allison LaPlante
Lia Comerford
Kevin Cassidy


KELLER ROHRBACK L.L.P.

_____
Dan Mensher

Attorneys for Plaintiffs

Exhibit A

# WAIVER OF CLAIMS, EXPRESS
# ASSUMPTION OF RISKS

This waiver of claims and express assumption of risks (WAIVER) shall apply inclusive of the beginning and ending dates listed below.

From: _____   To: _____

1.  The undersigned, being of lawful age hereby acknowledged, do/does hereby and for my heirs, executors, administrators, successors and assigns release, acquit and forever discharge Magic Mountain LLC, dba, SIX FLAGS MAGIC MOUNTAIN (SFMM), and Six Flags Theme Park Inc. (SFTP), and their respective officers, agents, servants, successors, heirs, executors, administrators and all other related persons, firms, corporations, associations or partnerships, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and/or property damage and the consequences thereof resulting or to result from any accident, casualty or event which may occur while visiting, working at, or inspecting the facility located at 26101 Magic Mountain Parkway in Valencia, California (FACILITY) for the purpose of a visit, work or inspection or any other related purpose whatsoever as required/sought and/or agreed to and set forth in the Consent Decree filed with the United States District Court for the Central District of California in the case of *Wishtoyo Foundation v. Magic Mountain* LLC, Civil Case No.:CV12-05600-SVW-MAN.

2.  I understand that there are potential risks and dangers associated with my entry onto and presence at the FACLITY and I agree to enter onto and be present at the FACLITY and freely accept and assume all associated risks and hazards in conjunction with my presence there.

3.  Said WAIVER shall apply to any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation described in paragraph 1 ("CLAIMS") arising out of or related in any manner to the activities of SFMM and and/or SFTP and their employees, agents or contractors without limitation, except for any CLAIMS resulting from the intentional or grossly negligent actions or omissions of SFMM and and/or SFTP and their employees, agents or contractors.

In signing this WAIVER, I acknowledge and represent that I have read and understand it and that I sign it voluntarily and for full and adequate consideration, fully intending to be bound by the same.  I expressly agree that the WAIVER is intended to be as broad and inclusive as permitted by the laws of California, by which it shall be governed and interpreted.  I agree that in the event that any clause or provision in this WAIVER shall be held to be invalid by any court of competent jurisdiction, the invalidity of such clause or provision shall not otherwise affect the remaining provisions of this WAIVER, which shall continue to be enforceable.

Date_____          Print Name_____

                        Sign Name_____

1          ~~[PROPOSED]~~ ORDER

2          This Court having found that the foregoing Consent Decree was entered into in

3   good faith and that the terms of the foregoing Consent Decree are fair, reasonable and

4   just, the provisions of the foregoing Consent Decree are hereby approved and compliance

5   with all provisions thereof is **HEREBY ORDERED**.

6          This Court shall retain jurisdiction over this matter during the pendency of the term

7   of this Consent Decree.

8   **IT IS SO ORDERED**.

9

10  Date:   March _____        _____

11                                  Honorable Stephen V. Wilson
                                    UNITED STATES DISTRICT COURT JUDGE
                                    CENTRAL DISTRICT OF CALIFORNIA
12

13

14

15

16

17

18

19

20

21