Daniel Cooper (Bar No. 153576)
daniel@sycamore.law
Hannah Mathieson (Bar No. 358967)
hannah@sycamore.law
SYCAMORE LAW, INC.
1004 O'Reilly Avenue
San Francisco, CA 94129

Erina Kwon (Bar No. 235079)
erina@lawaterkeeper.org
Benjamin Harris (Bar No. 313193)
ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 East 2nd Street, Suite 250
Los Angeles, CA 90012
Telephone: (310) 394-6162
Facsimile: (310) 394-6178

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER,
FRIENDS OF THE SANTA CLARA RIVER, and
WISHTOYO FOUNDATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WISHTOYO FOUNDATION ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>MAGIC MOUNTAIN, ET AL.,<br><br>Defendant. | Civil No.: CV12-05600-SVW-MAN<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CIVIL CONTEMPT, OR IN THE ALTERNATIVE, MOTION TO ENFORCE CONSENT DECREE**<br><br>Judge: Honorable Stephen V. Wilson<br>Action Filed: June 27, 2012<br>Hearing: March 23, 1:30 p.m. |

- 1 -

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................... - 6 -

II.  STATEMENT OF FACTS .................................................................. - 7 -

A.  REGULATORY AND PROCEDURAL HISTORY ......................................... - 7 -

i.  *Citizen Enforcement Action and Settlement Agreement* ........................... - 7 -

B.  CONSENT DECREE TERMS SUBJECT TO THIS ENFORCEMENT PROCEEDING ....... - 8 -

i.  *Substantive Provisions of the Consent Decree* ........................................... - 8 -

ii.  *Procedural Provisions of the Consent Decree* ....................................... - 12 -

C.  PERMITTING AND AGENCY ENFORCEMENT ...................................... - 13 -

D.  MAGIC MOUNTAIN'S NON-COMPLIANCE WITH THIS CONSENT DECREE ......... - 14 -

E.  ENVIRONMENTAL GROUPS' EFFORTS TO FACILITATE AND/OR COMPEL COMPLIANCE THROUGH INFORMAL DISPUTE RESOLUTION ................................. - 15 -

III. LEGAL BACKGROUND .................................................................. - 17 -

IV.  ARGUMENT .................................................................................. - 19 -

A.  MAGIC MOUNTAIN FAILED AND CONTINUES TO FAIL TO COMPLY WITH THE EXPRESS TERMS OF THE CONSENT DECREE ............................................................. - 19 -

i.  *Effluent Limitations* .................................................................. - 19 -

ii.  *Infiltration System* .................................................................. - 20 -

iii.  *Reporting and Communication Requirements* ........................................ - 21 -

iv.  *Stipulated Penalties* .................................................................. - 23 -

B.  JUDICIAL ENFORCEMENT THROUGH CIVIL CONTEMPT IS AN APPROPRIATE REMEDY FOR MAGIC MOUNTAIN'S NON-COMPLIANCE WITH THE SETTLEMENT AGREEMENT ............................................................................................. - 24 -

i.  *The Court May Properly Enforce the Terms of the Settlement Agreement through Civil Contempt* .................................................................. - 24 -

ii.  *There is No Reasonable Dispute that Magic Mountain is in Violation of the Settlement Agreement* .................................................................. - 25 -

C.  MAGIC MOUNTAIN'S CLAIMED INABILITY TO OBTAIN THE NECESSARY PERMITTING TO INSTALL INFILTRATION PONDS DOES NOT CONSTITUTE FORCE MAJEURE ............................................................................................. - 26 -

V.  REQUESTED REMEDY FOR MAGIC MOUNTAIN'S NON-COMPLIANCE WITH THE CONSENT DECREE ...................................... - 29 -

Case No. CV12-05600-SVW-MAN                    MOTION FOR CIVIL CONTEMPT

A.   PLAINTIFFS REQUEST AN ORDER DECLARING MAGIC MOUNTAIN IN VIOLATION OF THE CONSENT DECREE AND INJUNCTIVE RELIEF ENFORCING THE TERMS OF THE CONSENT DECREE ................................................................................- 30 -

B.   STIPULATED PAYMENTS FOR MAGIC MOUNTAIN'S NON-COMPLIANCE WITH THE SETTLEMENT AGREEMENT ARE AN APPROPRIATE REMEDY ...................................- 30 -

C.   PLAINTIFFS ARE ENTITLED TO REASONABLE ATTORNEYS FEES INCURRED IN ENFORCING THE SETTLEMENT AGREEMENT .........................................................- 32 -

**VI.   CONCLUSION** ............................................................................................ **- 33 -**

Case No. CV12-05600-SVW-MAN                                    MOTION FOR CIVIL CONTEMPT

**TABLE OF AUTHORITIES**

**CASES**

*Alaska Ctr. for the Env't v. Browner*,
20 F.3d 981 (9th Cir. 1994) ...................................................................................30

*Arata v. Nu Skin Int'l*,
96 F.3d 1265 (9th Cir. 1996) ................................................................................24

*Camancho v. Bridgeport Fin.*,
523 F.3d 973 (9th Cir. 2008) ................................................................................32

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)................................................................................................18

*Clark v. City of Los Angeles*,
803 F.2d 987 (9th Cir. 1986) ................................................................................32

*Crystal Palace Gambling Hall, Inc. v. Mark Twain Indust., Inc.*,
817 F.2d 1361 (9th Cir. 1987) ..............................................................................19

*Dacanay v. Mendoza*,
573 F.2d 1075 (9th Cir. 1978) ..............................................................................18

*Go-Video v. Motion Picture Ass'n of Am. (In re Dual-Deck Video Cassette Recorder Antitrust Litig.)*, 10 F.3d 693 (9th Cir. 1986) .......................................18, 19, 24, 25

*Green v. Baca*,
225 F.R.D. 612 (C.D. Cal. 2005) .........................................................................32

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)........................................................................................12, 32

*Int'l Union v. Bagwell*,
512 U.S. 821 (1994)..............................................................................................24

*Knupfer v. Lindblade (In re Dyer)*,
322 F.3d 1178 (9th Cir. 2003) ..............................................................................19

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)..............................................................................................24

*Lackey v. Stinnie*,
604 U.S. 192 (2025)..............................................................................................18

*Maher v. Gagne*,
448 U.S. 122 (1980)..............................................................................................12

*Nat. Res. Def. Council v. Sw. Marine, Inc.*,
236 F.3d 985 (9th Cir. 2000) ................................................................................30

*Peterson v. Highland Music*,

- 4 -

140 F.3d 1313 (9th Cir. 1998) ...................................................................... 24

*SEC v. Hickey,*
322 F.3d 1123 (9th Cir. 2003) ..................................................................... 19

*Shillitani v. U.S.,*
384 U.S. 364 (1966) ..................................................................................... 24

*Spallone v. U.S.,*
493 U.S. 265 (1990) ..................................................................................... 24

*Thompson v. Enomoto,*
815 F.2d 1323 (9th Cir. 1987) ................................................................ 24, 31

*TNT Marketing Inc. v. Agresti,*
796 F.2d 276 (9th Cir. 1986) ....................................................................... 32

*U.S. v. Armour & Co.,*
402 U.S. 673 (1971) ..................................................................................... 31

*U.S. v. Ayres,*
166 F.2d 991 (9th Cir. 1999) ....................................................................... 24

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.,*
689 F.2d 885 (9th Cir. 1982) ....................................................................... 25

**RULES**

Fed. R. Civ. P. 70 ................................................................................... 18, 30

Case No. CV12-05600-SVW-MAN                                    MOTION FOR CIVIL CONTEMPT

## I. INTRODUCTION

Plaintiffs Los Angeles Waterkeeper, Friends of the Santa Clara River, the Wishtoyo Foundation, and Ventura Coastkeeper (collectively "Plaintiffs" or "Environmental Groups") seek this Court's assistance in enforcing the terms of the Consent Decree entered on March 26, 2015 ("Consent Decree"). *See* ECF Dkt. No. 283. As required under the terms of the Consent Decree, the Environmental Groups attempted to resolve the dispute over Magic Mountain LLC and Six Flags Theme Park Inc.'s ("Defendant" or "Magic Mountain") failure to comply with the Consent Decree via an informal meet and confer process, but was unsuccessful.

To date, Magic Mountain has violated the terms of the Consent Decree by: 1) violating effluent limitations established by the Individual Permit; (2) failing to abide by plans to install on-site infiltration basins; (3) failing to abide by reporting and communication requirements to the Environmental Groups; and (4) failing to pay stipulated penalties. Magic Mountain has failed to comply with the Consent Decree virtually since its entering.

The Environmental Groups request that the Court hold Magic Mountain in civil contempt for failing to comply with the Consent Decree, and requests that the Court enforce the Consent Decree, and order Magic Mountain to comply with the Consent Decree. The Environmental Groups further request that the Court order Magic Mountain to pay all stipulated penalties due under the Consent Decree in the amount of $2,145,000, less interest. Finally, the Environmental Groups request that the Court

award reasonable attorneys' fees and costs in the amount of $148,380.53 incurred in enforcing the Consent Decree in addition to any fees incurred on reply, and require payment of $15,000 per year to refund compliance monitoring.

## II. STATEMENT OF FACTS

### a. Regulatory and Procedural History

#### i. Citizen Enforcement Action and Settlement Agreement

On April 20, 2012, the Environmental Groups served Magic Mountain with a 60-day notice of intent to sue letter ("Notice Letter"), for violations under the Clean Water Act ("the Act"). 33 U.S.C. § 1251 et seq. The Notice Letter alleged violations of the Act for Magic Mountain's discharge of pollutants into the Santa Clara River in violation of their National Pollutant Discharge Elimination System ("NPDES") Permit No. CA0003352, Order No. R4-2011-0029 ("Individual Permit") and California's General Permit for Discharges of Storm Water Associated with Industrial Activities, NPDES General Permit No. CAS000001, State Water Resources Control Board Order No. 920120DWQ, as amended by Order No. 97-03-DWQ ("General Permit").

The Environmental Groups filed a complaint in this Court on June 27, 2012. ECF Dkt. No. 1. The Parties entered a stipulated stay on December 14, 2012 to facilitate settlement negotiations. ECF Dkt. No. 14. Settlement negotiations continued until July 22, 2013, upon which date the Court lifted the stay and ordered the Parties to submit a proposed trial schedule and schedule to the Court. ECF Dkt. No. 22. The

Case No. CV12-05600-SVW-MAN                                    MOTION FOR CIVIL CONTEMPT

Parties engaged in protracted motion practice, including a third-party complaint, motion to dismiss, discovery disputes, and motions for summary judgment. On October 2, 2014, the Parties were assigned a mediator by the Court to facilitate further settlement negotiations as litigation progressed. ECF Dkt. No. 196. Ultimately, the Parties drafted a Consent Decree, and the Court entered the order on March 26, 2015. ECF Dkt. No. 283.

> b. <u>2015 Consent Decree Terms Subject to this Enforcement Proceeding</u>
>
> *i.  Substantive Provisions of the Consent Decree*

The 2015 Consent Decree requires Magic Mountain to comply with the Individual Permit for all stormwater discharges from Discharge Points 001, 002, and 003. ECF Dkt. No. 283, ¶ 7. To demonstrate Consent Decree compliance, Magic Mountain was required to demonstrate four consecutive stormwater samples without effluent limitation exceedances. *Id.*, ¶ 8. In the event that Magic Mountain was unable to make such a demonstration and if the Parties did not agree to amend the Consent Decree, Magic Mountain was required to design and install an on-site infiltration basin to retain stormwater runoff from an 85th percentile, 24-hour rainfall event. *Id.*, ¶ 9-10. The design of the infiltration system must be presented to the Environmental Groups and the Environmental Groups shall provide comments within 45 days of receipt of the plans. *Id.*, ¶ 13-14.

Magic Mountain is further required to provide the Environmental Groups with photo documentation of qualifying storm event stormwater discharges and data regarding the flow rate of the discharges. *Id.*, ¶ 18. Magic Mountain must collect

- 8 -

stormwater samples and analyze those samples for all constituents with numeric effluent limitations in the Individual Permit in addition to zinc, iron, and aluminum. *Id.*, ¶ 20. Within five days of receipt of the analysis results, Magic Mountain must provide the results of the analysis to the Environmental Groups. *Id.* The Consent Decree also requires Magic Mountain to annually conduct Whole Effluent Toxicity ("WET") sampling and analysis on one stormwater sample collected during each qualifying storm event. *Id.*, ¶ 22. WET analysis results must be provided to the Environmental Groups within five days of receipt. *Id.*

The 2015 Consent Decree further requires Magic Mountain to provide the Environmental Groups with copies of "all Consent Decree and Individual Permit compliance and monitoring data, including inspection reports, on a quarterly basis..." *Id.*, ¶ 32. Magic Mountain is required to concurrently copy the Environmental Groups on "all documents and communications solely in relation to stormwater runoff at the Facility that are submitted to [governmental agencies]." *Id.*, ¶ 33. Any correspondence related to water quality received by Magic Mountain from a governmental agency must be provided to the Environmental Groups within 14 days of receipt. *Id.*

The Consent Decree is self-effectuating and includes stipulated payments for Magic Mountain's violations. Paragraphs 37 and 38 provide:

37. <u>Waiver and Stipulated Penalties</u>.

a. Plaintiffs agree to waive any Clean Water Act claims they may have involving the Facility's discharges that may have arisen prior to the Effective Date of the Consent Decree, as well as any Clean Water Act claims they may have involving the Facility's stormwater discharges that may arise during the life of this Consent Decree as set forth herein.

b. Defendants shall make a remediation payment of $3,000 ("Stipulated Penalty") for each exceedance of any numeric effluent limitation in the Facility's Individual Permit (presently contained in Section IV of the Individual Permit), except that this Stipulated Penalty provision shall not apply during the first year of this Consent Decree.

c. Any Stipulated Penalties paid shall be used for a project designed to analyze, reduce, prevent, or otherwise mitigate the effects of polluted stormwater and/or non-stormwater discharges into the Santa Clara River and shall be made to the Rose Foundation for Communities and the Environment, and mailed via certified mail or overnight delivery to Tim Little, Executive Director, Rose Foundation at 1970 Broadway, Suite 600, Oakland, CA 94612-2218.

d. Defendants shall pay the Stipulated Penalties within 20 days of receiving the analysis of a Stormwater Sample that shows a

- 10 -

violation of the Facility's Individual Permit numeric effluent limitations. Defendants shall provide Plaintiffs, via electronic mail, with proof of each payment at the time it is made.

38. Interest Payments. In the event of late payment of any of the sums due under this Consent Decree, Defendants shall pay interest to Plaintiffs, if the sum is owed pursuant to paragraphs 24 or 36, or to the Rose Foundation for Communities and the Environment, if the sum is owed pursuant to paragraphs 34 or 37, and interest shall accrue daily from the first day past the date the sum was due until the date Defendants tender payment. The interest rate, as specified in 28 U.S.C. 1961, shall apply. All such interest payments to the Plaintiffs shall be made payable to Earthrise Law Cetner, addressed to Allison LaPlante, Earthrise Law Center at Lewis and Clark Law School, 10015 SW Terwilliger Blvd., Portland, OR 97219, and sent via certified mail or overnight delivery. *Id.*, ¶ 37-38.

Additionally, "litigation costs and fees incurred due to motions practice before this Court to enforce the Consent Decree or address an alleged breach of this Consent Decree [] may be awarded at the Court's discretion [] in accordance with the standard established by the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and case law interpreting that standard." *Id.*, ¶ 50.

- 11 -

Further, section 505(d) of the Clean Water Act provides that a citizen plaintiff is entitled to recover its attorneys' fees and costs if it prevails or substantially prevails in an enforcement action. 33 U.S.C. § 1365(d). The Environmental Groups are prevailing parties for the purpose of recovering attorneys' fees if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal citations omitted); *Maher v. Gagne*, 448 U.S. 122, 126 -27, 130 (1980) (A party need not prevail on every claim or obtain all the relief requested in order to recover attorneys fees.).

### ii. Procedural Provisions of the Consent Decree

The Consent Decree provides an express mechanism to compel compliance with its terms. Paragraphs 48 and 49 allow the aggrieved party to file a motion to determine whether either party is in breach after attempts to resolve the matter informally have failed:

48. <u>Meet and Confer</u>. A party to this Consent Decree shall invoke the dispute resolution of this Section by notifying all other Parties in writing of the matter(s) in dispute and of the party's proposal to resolve the dispute under this Section. The Parties shall then meet and confer in an attempt to resolve the dispute no later than 14 days from the date of the notice. The Parties have 14 days from the date on which they meet and confer to resolve the dispute.

- 12 -

49. If the Parties cannot resolve a dispute by the end of the meet and confer period, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Parties shall jointly apply to the Court for an expedited hearing schedule on the motion. *Id.*, ¶ 48-49.

Thus, the Court is empowered to enforce the Consent Decree after the Parties have attempted to resolve their disputes, and to award attorneys' fees and costs to the prevailing or substantially prevailing party once a motion is filed with the Court to enforce this Consent Decree.

c.  Permitting and Agency Enforcement

Between the entry of the Parties' Consent Decree and the present, the Regional Board has issued six (6) separate Administrative Civil Liability orders against Magic Mountain for various violations of the Individual Permit.

On July 13, 2015, the Regional Board issued a Notice of Violation, alleging that Magic Mountain had violated effluent limitations for oil and grease, total suspended solids, copper, and chloride. On January 16, 2016, Magic Mountain agreed to pay penalties totaling $171,000 as civil liability for the alleged violations. *See* Acceptance of Conditional Resolution and Waiver of Right to Hearing Magic Mountain LLC Settlement Offer No. R4-2015-0116. Magic Mountain made similar settlement payments again of $243,000 in 2017, $24,000 in 2018, $456,000 in 2020,

- 13 -

$90,000 in 2023, and $585,000 in 2024. *See* Acceptance of Conditional Resolution and Waiver of Right to Hearing, Magic Mountain LLC Settlement Offer No. R4-2017-0013, NPDES Permit No. CA0003352; Acceptance of Conditional Resolution and Waiver of Right to Hearing, Magic Mountain LLC, Settlement Offer No. R4-2017-0196, NDPES Permit No. CA0003352; Acceptance of Conditional Resolution and Waiver of Right to Hearing, Magic Mountain, LLC, Settlement Offer No. R4-2018-0133, NPDES Permit No. CA0003352; Acceptance of Conditional Resolution and Waiver of Right to Hearing, Magic Mountain, LLC, Settlement Offer No. R4-2023-0028, NPDES Permit No. CA0003352; Acceptance of Conditional Resolution and Waiver of Right to Hearing, Magic Mountain, LLC, Settlement Offer No. R4-2024-0329, Permit No. CA0003352. Despite these enforcement actions, Magic Mountain has continued to violate the Individual Permit's effluent limitations, including as recently as December 31, 2025. *See* Exhs. I, J.

    d.  <u>Magic Mountain's Non-Compliance with this Consent Decree</u>

Magic Mountain has failed to comply with the Consent Decree since shortly after its adoption. The Consent Decree requires Magic Mountain to meet Effluent Limitations set out in Consent Decree. It has failed to do so for over a decade. To meet the Effluent Limitations, Magic Mountain is required to design and install an infiltration system to infiltrate stormwater runoff from the entire facility. To date, Magic Mountain has neither designed nor implemented any such system. Declaration of Erina Kwon in Support of Motion for Civil Contempt ("Kwon Decl."), ¶ 5;

Declaration of Candice Meneghin in Support of Motion for Civil Contempt ("Meneghin Decl."), ¶ 8; Declaration of Tevin Schmitt in Support of Motion for Civil Contempt ("Schmitt Decl.") ¶ 9. Magic Mountain has also never fully complied with its reporting obligations under the Consent Decree—providing the Environmental Groups with only periodic rain data rather than photo documentation of stormwater discharges, flow rates of stormwater discharges, stormwater analysis results, WET analysis results, and communications submitted to the public agencies. Kwon Decl., ¶¶ 8-14; Meneghin Decl., ¶¶ 8-14; Schmitt Decl., ¶¶ 9-15. Finally, Magic Mountain is required to pay stipulated penalties to the Rose Foundation for every exceedance of its Individual Permit's Effluent Limitations. Over the decade-long life of the Consent Decree, Magic Mountain has failed to pay a single stipulated penalty. Kwon Decl., ¶ 16; Meneghin Decl., ¶15; Schmitt Decl., ¶ 17.

e. <u>Environmental Groups' Efforts to Facilitate and/or Compel Compliance through Informal Dispute Resolution</u>

By the end of 2017, Magic Mountain had not yet demonstrated four consecutive samples without exceedances of permit effluent limitations. Kwon Decl., ¶ 17; Meneghin Decl., ¶ 16; Schmitt Decl., ¶ 18. As such, the Parties met and conferred in January 2018 to initiate the process of designing and installing an on-site infiltration basin/gallery. Magic Mountain submitted a proposal to the Regional Board. The Environmental Groups provided statements of support for Magic Mountain's proposed plan to the Regional Board. *See* Exh. A. Magic Mountain, without notice to or consultation with the Environmental Groups, abandoned its plans

to implement an infiltration system at some point before July 2022. Kwon Decl., ¶ 19; Meneghin Decl., ¶ 17; Schmitt Decl., ¶ 23; *see also* Exh. B. Due to organizational turnover and a dearth of information from Magic Mountain, no further action was taken by the Environmental Groups until 2025. Kwon Decl., ¶ 20; Meneghin Decl., ¶ 19; Schmitt Decl., ¶ 24.

The Environmental Groups then invoked the informal dispute resolution provision of the Consent Decree on August 5, 2025. Declaration of Daniel Cooper in Support of Contempt Motion ("Cooper Decl."), ¶ 2-5; Exh. C; *see also* ECF Dkt. No. 283, ¶ 48-49. The initial request to meet and confer detailed Magic Mountain's prior and continued violations of the 2015 Consent Decree. *See* Exh. C. A virtual meeting was conducted on August 15, 2025. Cooper Decl., ¶ 6. At that meeting the Parties agreed to conduct a site visit and inspection. Cooper Decl., ¶ 7.

On October 15, 2025, the Environmental Groups conducted a site visit at Magic Mountain. Cooper Decl., ¶ 8. Both before and after the facility tour, the Parties' respective experts discussed site-specific logistics and potential avenues for settlement. Cooper Decl., ¶ 10. The Environmental Groups, the Environmental Groups' counsel, the Environmental Group's technical expert, Magic Mountain, Magic Mountain's technical consultants, and Magic Mountain's counsel all attended the site visit. Cooper Decl., ¶ 9. During the course of the visit, the Environmental Groups identified materials exposed to stormwater runoff in the Maintenance Yard

Case No. CV12-05600-SVW-MAN                                    MOTION FOR CIVIL CONTEMPT

that cause and contribute to the Facility's extensive history of Effluent Limitation exceedances. Cooper Decl., ¶ 27.

After the site visit, the Parties continued settlement negotiations but have been unable to reach agreement. Cooper Decl., ¶ 11-26. Despite the Environmental Groups invocation of informal dispute resolution to bring Magic Mountain into compliance with the Consent Decree, Magic Mountain continued to violate the reporting and communication provisions of the Consent Decree. Cooper Decl., ¶ 28. For example, from December 2025 to January 2026, Magic Mountain continued to report exceedances of Effluent Limitations to the Regional Board without copying the Environmental Groups and did not provide the Environmental Groups the result of stormwater testing analysis within five days of receipt, even after the Environmental Groups explicitly requested they do so. Cooper Decl., ¶ 29.; ECF No. 283, ¶ 20, 32-33. On the two occasions Magic Mountain did provide contemporaneous notice of a numeric effluent exceedances in a stormwater sample, Magic Mountain provided notice outside the five-day notification window and without paying any Stipulated Penalty. *See* Exh. D. And Magic Mountain continues to violate effluent limitation each time it rains.

## III.    LEGAL BACKGROUND

In addition to the 2015 Consent Decree's contractual provisions providing for enforcement, it is well settled that courts have inherent powers to enforce the terms of the 2015 Consent Decree through civil contempt proceedings. Civil contempt is

available "[i]f a judgment requires a party... to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—... [o]n application by a party entitled to performance... [t]he court may also hold the disobedient party in contempt." Fed. R. Civ. P. 70(a), (c), (e).

Courts possess the inherent power to assure that their orders are carried out. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991); *see also Dacanay v. Mendoza,* 573 F.2d 1075, 1078 (9th Cir. 1978) ("[c]ourts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it..."). "A consent decree reflects the parties' own resolution of the merits, but it is approved and given force of law by the court. Violation of a consent decree is enforceable by a citation for contempt." *Lackey v. Stinnie*, 604 U.S. 192, 207 (2025) (internal citations omitted).

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Go-Video v. Motion Picture Ass'n of Am. (In re Dual-Deck Video Cassette Recorder Antitrust Litig.)*, 10 F.3d 693, 695 (9th Cir. 1986) ("Civil contempt occurs when a party fails to comply with a court order.") (internal citations omitted). Further, the contempt "need not be willful" and "there is no good faith exception to the requirement" to comply with a Court order. *See id.*, at 695 (quoting *Crystal Palace*

- 18 -

*Gambling Hall, Inc. v. Mark Twain Indust., Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987)). In order to find that a party is in contempt, the Court must determine:

> (1)That [the defendant] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence. *Go-Video*, 10 F.3d at 695.

Courts have "broad equitable power to order appropriate relief in civil contempt proceedings." *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003). The Ninth Circuit has also emphasized that the award of attorneys' fees are an appropriate component of a civil contempt award. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1195 (9th Cir. 2003).

**IV.   ARGUMENT**

   a. <u>Magic Mountain Failed and Continues to Fail to Comply with the Express Terms of the Consent Decree</u>

Magic Mountain has violated the terms of the Consent Decree by: (1) violating effluent limitations established by the Individual Permit; (2) failing to abide by plans to install on-site infiltration basins; (3) failing to abide by reporting and communication requirements to the Environmental Groups; and (4) failing to pay stipulated penalties.

   i.  *Effluent Limitations*

On at least 725 occasions since entering the Consent Decree, Magic Mountain has self-reported violations of the Individual Permit to the Regional Board. *See* Exhs.

I, J.  Each violation of the Individual Permit's effluent limitations is a separate and distinct violation of the Consent Decree. ECF No. 283, ¶ 7.

### ii.  Infiltration System

Magic Mountain has failed to abide by plans to install on-site infiltration basins. By December 31, 2017, Magic Mountain had not shown four consecutive samples without any exceedances of the Individual Permit's numeric effluent limitations. *See* ECF No. 283, ¶ 10; *see* Kwon Decl., ¶ 17; Meneghin Decl., ¶ 16; Schmitt Decl., ¶ 18. In accordance with the Consent Decree, the parties conferred in January 2018. The conferral did not result in an agreement in writing to amend the Consent Decree and, as such, Magic Mountain was required to initiate the process of designing and installing an infiltration basin compliant with the terms detailed in paragraphs 11-14 of the Consent Decree. ECF No. 283, ¶ 10-14. To secure approval from the Regional Board for the infiltration basin, Magic Mountain submitted a proposal for design and installation. The Environmental Groups, to assist in gaining Regional Board approval, provided statements of support for the proposed infiltration basin. *See* Exh. A. In violation of the Consent Decree, and without consultation with or notice to the Environmental Groups, Magic Mountain abandoned those plans. Kwon Decl., ¶¶ 18-19; Meneghin Decl., ¶¶ 17-18; Schmitt Decl., ¶ 22-23; *see also* Exh. B. As such, Magic Mountain has presently not adopted, designed, nor implemented any infiltration system and continues to discharge polluted water to the Santa Clara River. There can be no dispute that Magic Mountain violated and

continues to violate the express terms of paragraphs 8, 9, 10, 11, 12, 13, 14, and 15. Consent Decree, ¶ 8 – 15.

### iii.   Reporting and Communication Requirements

Magic Mountain has failed to abide by reporting and communication requirements of the Consent Decree to the Environmental Groups. Magic Mountain is required to provide the Environmental Groups with photo documentation of qualifying stormwater event discharges and data documenting the flow rate of the discharge, and to provide the Environmental Groups with weekly rainfall data during the rainy season. *Id.*, ¶ 18 – 19. While weekly rainfall data has sporadically been provided to the Environmental Groups during the life of the Consent Decree, photo documentation of qualifying storm events and flow rate data has not been provided. Kwon Decl., ¶¶ 8-10; Meneghin Decl., ¶ 9-10; Schmitt Decl. ¶ 10-12.

Magic Mountain is also required to collect and analyze stormwater and provide the results of that analysis to the Environmental Groups within five days of receipt of the results. Consent Decree, ¶ 20. Magic Mountain has not done so. Kwon Decl., ¶ 11; Meneghin Decl., ¶ 11; Schmitt Decl., ¶ 13. Further, paragraph 22 requires Magic Mountain to conduct annual WET testing and provide the results of those tests to the Environmental Groups within five (5) days of receipt of results. Consent Decree, ¶ 22. Magic Mountain has provided no information regarding WET testing to the Environmental Groups during the life of the Consent Decree. Kwon Decl., ¶ 13; Meneghin Decl., ¶ 12; Schmitt Decl., ¶ 14.  While Magic Mountain has been

collecting stormwater samples and conducting pollutant analysis, these results have generally only been reported to the Regional Board—not provided directly to the Environmental Groups as the Consent Decree requires. Kwon Decl., ¶ 11-12; Meneghin Decl., ¶ 11; Schmitt Decl., ¶ 13.

Consent Decree paragraphs 32 and 33 impose data reporting and document provision obligations on Magic Mountain. Magic Mountain is in violation of both these provisions of the Consent Decree. Paragraph 32 provides that Magic Mountain must provide Plaintiffs with copies of all Consent Decree and Individual Permit compliance and monitoring data, including inspection reports, on a quarterly basis. Magic Mountain has failed to provide the Environmental Groups with such reporting. Kwon Decl., ¶ 15; Meneghin Decl., ¶ 14; Schmitt Decl., ¶ 16.

Paragraph 33 further requires Magic Mountain to copy the Environmental Groups on "all documents and communications solely in relation to stormwater runoff at the Facility that are submitted" to any governmental agency. Consent Decree, ¶ 33. Magic Mountain has also not complied with this provision. Kwon Decl., ¶ 14; Meneghin Decl., ¶ 13; Schmitt Decl., ¶ 15. Over the course of many years, extensive discussion between Magic Mountain, the Regional Board, LASan, and other governmental agencies involved in Magic Mountain's plan to divert produce water from the Facility to the Valencia Water Reclamation Plant has taken place. The Environmental Groups were entirely unaware of such discussions because of Magic Mountain's failure to comply with the terms of the Consent Decree. Kwon

- 22 -

Decl., ¶ 20; Meneghin Decl., ¶ 19; Schmitt Decl., ¶ 24. Magic Mountain was, and continues to be, obligated to copy the Environmental Groups on all such communications. Consent Decree, ¶ 33.

### iv.  Stipulated Penalties

Of the 725 self-reported violations of the Individual Permit's effluent limitations, Magic Mountain has failed to pay any of the stipulated penalties as required under the Consent Decree. Kwon Decl., ¶ 16; Meneghin Decl., ¶ 15; Schmitt Decl., ¶ 17. The Consent Decree requires Magic Mountain to make a $3,000 stipulated penalty to the Rose Foundation for Communities and the Environment for each exceedance of any numeric effluent limitation of the Individual Permit. Consent Decree, ¶ 37(b). The Stipulated Penalty provision became effective the second year of the life of the Consent Decree—March 27, 2016. Since March 2016, the Rose Foundation has received no payments from Magic Mountain, nor have the Environmental Groups received notice of such payments. Kwon Decl., ¶ 16; Meneghin Decl., ¶ 15; Schmitt Decl., ¶ 17.

Magic Mountain has violated Individual Permit numeric effluent limitations at least 725 times since March 27, 2016. *See* Cooper Decl., Exhs. I, J. Thus, pursuant to the Consent Decree, Magic Mountain owes at least $2,145,000 USD in stipulated penalties, plus interest. *See* Consent Decree, ¶ 38 (requiring interest payments for late payments of stipulated penalties).

b. <u>Judicial Enforcement through Civil Contempt is an Appropriate Remedy for Magic Mountain's Non-Compliance with the Settlement Agreement</u>

Judicial enforcement through civil contempt is an appropriate remedy for Magic Mountain's noncompliance with the Consent Decree. *See Arata v. Nu Skin Int'l*, 96 F.3d 1265, 1268-69 (9th Cir. 1996) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)); *see also Spallone v. U.S.,* 493 U.S. 265, 276 (1990) (citing *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966)). Clear and convincing evidence has also established that Magic Mountain has previously violated and is ongoing violation of the provisions of the Consent Decree. As such, the Court may find Magic Mountain in civil contempt without conducting an evidentiary hearing. *See Go-Video*, 10 F.3d at 695; *see also Int'l Union v. Bagwell*, 512 U.S. 821, 827 (1994); *U.S. v. Ayres*, 166 F.2d 991, 995 (9th Cir. 1999); *Peterson v. Highland Music*, 140 F.3d 1313, 1324 (9th Cir. 1998).

     *i. The Court May Properly Enforce the Terms of the Settlement Agreement through Civil Contempt*

The Consent Decree explicitly enables the Court to enforce its terms. *See* ECF Dkt. No. 283, ¶ 67. The Court also has inherent power to order injunctive relief for violation of this Consent Decree. Fed. R. Civ. P. 70; *see also Thompson v. Enomoto*, 815 F.2d 1323, 1326 (9th Cir. 1987). Magic Mountain's failure to comply with the Consent Decree for over a decade constitutes civil contempt. *See Arata*, 96 F.3d at 1268-69; *see also Kokkonen*, 511 U.S. at 381; *Spallone*, 493 U.S. at 276; *Shillitani*, 384 U.S. at 370.

### ii. *There is No Reasonable Dispute that Magic Mountain is in Violation of the Settlement Agreement*

Magic Mountain's abandonment of its plans to install on-site infiltration basins, without notice to the Environmental Groups; its failure to provide timely reporting, communication, and documentation as required by the Consent Decree; and its failure to pay more than a decade's worth of stipulated penalties demonstrate by clear and convincing evidence its violation of the Consent Decree. *See Go-Video*, 10 F.3d at 695 (*citing Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982)).

Since the adoption of the Consent Decree, Magic Mountain has violated the Facility's Individual Permit Effluent Limitations on at least 725 occasions. *See* Exhs. I, J. There can be no reasonable dispute that these exceedances are violations of the Consent Decree.

To date, Magic Mountain has not designed, installed, or operated an infiltration system to manage and infiltrate stormwater runoff from the Facility. Kwon Decl., ¶ 5; Meneghin Decl., ¶ 8; Schmitt Decl., ¶ 9. Magic Mountain abandoning its plans to install an infiltration basin, without consultation from the Environmental Groups, is also a violation of the Consent Decree. There is no reasonable dispute that this failure is a violation of the Consent Decree.

Magic Mountain also has failed to provide the Environmental Groups with monitoring and testing data, flow rate information, communications with required governmental agencies, and other documents and information required by the

- 25 -

Consent Decree. There can be no reasonable dispute that this failure is a violation of the Consent Decree.

There is no dispute that Magic Mountain violated and continues to violate the express terms of paragraph 37 of the Consent Decree. The Rose Foundation has not received payment for any of the 725 self-reported violations of the Facility's Individual Permit Effluent Limitations. Kwon Decl., ¶ 16; Meneghin Decl., ¶ 15; Schmitt Decl., ¶ 17. There is no reasonable dispute that this failure to make stipulated payments is a violation of the Consent Decree.

      c.  <u>Magic Mountain's Claimed Inability to Obtain the Necessary Permitting to Install Infiltration Ponds Does Not Constitute Force Majeure</u>

Magic Mountain has not—and cannot—demonstrate that force majeure excuses it from noncompliance with the Consent Decree. The Environmental Groups anticipate that Magic Mountain will argue that its asserted inability to secure necessary permit approvals from the Regional Board, the Los Angeles Sanitation Department, and/or the Los Angeles County Sanitation Districts, falls withing the Consent Decree's force majeure provisions. To make this defense, Magic Mountain is required to invoke force majeure and has the burden of demonstrating that compliance with the terms of the Consent Decree have become impossible. *See* Consent Decree, ¶ 54-55.

54. Force Majeure. Defendants shall notify Plaintiffs pursuant to the terms of this paragraph, when timely implementation of the requirements set forth in this Consent Decree become impossible,

- 26 -

despite the timely good-faith efforts of Defendants due to circumstances beyond the reasonable control of Defendants or their agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendants....

a. If Defendants claims impossibility, they shall notify Plaintiffs in writing within 21 days of the date that Defendants first knew of the event or circumstance that caused or would cause a violation of this Consent Decree. The notice shall describe the reason for the nonperformance and specifically refer to this Section. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendants to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance. Defendants shall adopt all reasonable measures to avoid and minimize such delays.

b. The Parties shall meet and confer in good-faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of Defendants, due to circumstances beyond the control of Defendants that could not have been reasonably foreseen and prevented by the exercise of due

diligence by Defendants, the Parties will establish new deadlines consistent with the intent of this Consent Decree.

c. If Plaintiffs disagree with Defendants' notice, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the Dispute Resolution Procedure pursuant to Section V []. In such proceeding, Defendants shall bear the burden or proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

Magic Mountain made no effort to raise force majeure with the Environmental Groups. Kwon Decl., ¶ 21; Meneghin Decl., ¶ 21; Schmitt Decl., ¶ 25; Cooper Decl., ¶ 33. In or around January 2018, when it became clear that Magic Mountain could not demonstrate four consecutive samples without exceedances of Individual Permit effluent limitations, the Parties conferred and initiated the process of designing and installing an on-site infiltration basin/gallery. Magic Mountain submitted a proposal to the Regional Board for the infiltration system and began engaging in planning and design consultation with the Regional Board. The Environmental Groups provided statements of support for Magic Mountain's proposed plan to the Regional Board. *See* Exh. A.

Without notifying or consulting the Environmental Groups, Magic Mountain unilaterally abandoned its plan to install the on-site infiltration basin required by the Consent Decree. Kwon Decl., ¶ 18; Meneghin Decl., ¶ 18; Schmitt Decl., ¶ 23-24. In a July 7, 2022 email, a Magic Mountain consultant informed the Regional Board that Magic Mountain was pursuing a plan to capture its wastewater and send it to the Los Angeles County sanitary sewer. Schmitt Decl., ¶ 19-20; *see also* Exh. B. Magic Mountain had not notified the Environmental Groups of this plan. Kwon Decl., ¶¶ 18-19; Meneghin Decl., ¶ 18; Schmitt Decl., ¶ 22.

At no point prior to the Environmental Groups' invocation of the Consent Decree's meet and confer provisions on August 5, 2025 did Magic Mountain inform the Environmental Groups of its changed plans, claim impossibility, articulate a reason for its nonperformance, describe the delay, explain measures adopted to minimize delay, or otherwise comply with the requirements of paragraph 54 to properly invoke force majeure. Kwon Decl., ¶ 22; Meneghin Decl., ¶ 21; Schmitt Decl., ¶ 26. There can be no reasonable dispute that Magic Mountain failed to meet its burden under paragraph 54, and it is not excused from compliance with this Consent Decree.

## V. REQUESTED REMEDY FOR MAGIC MOUNTAIN'S NON-COMPLIANCE WITH THE CONSENT DECREE

Through this motion, the Environmental Groups request an order finding Magic Mountain in civil contempt for its violations of the Consent Decree. The Environmental Groups further request that this Court: (1) enforce the Consent Decree

- 29 -

and order Magic Mountain to achieve compliance; (2) order payment within fourteen days of the Court's order and all sums currently due under the Consent Decree in the amount of $2,145,000, less interest; and (3) award attorneys' fees and costs in the amount of $148,380.53 incurred in enforcing the Consent Decree, plus any additional fees incurred drafting this motion and subsequent reply, and require a payment of $15,000 to refund compliance oversight.

    a. <u>Plaintiffs Request an Order Declaring Magic Mountain in Violation of the Consent Decree and Injunctive Relief Enforcing the Terms of the Consent Decree</u>

The Consent Decree explicitly allows the Court to enforce its terms. *See* Consent Decree, ¶ 67. This Court may also exercise its inherent authority to order injunctive relief. *See* Fed. R. Civ. P. 70. Thus, the Environmental Groups request this Court to enforce the Consent Decree and order Magic Mountain to achieve compliance and maintain close oversight of Magic Mountain's compliance. Courts have "broad latitude in fashioning equitable relief when necessary to remedy an established wrong," and so long as the equitable relief is reasonably calculated to remedy that established wrong, it does not abuse discretion. *Nat. Res. Def. Council v. Sw. Marine*, Inc., 236 F.3d 985, 999-1000 (9th Cir. 2000) (citing *Alaska Ctr. for the Env't v. Browner*, 20 F.3d 981, 986 (9th Cir. 1994)).

    b. <u>Stipulated Payments for Magic Mountain's Non-Compliance with the Settlement Agreement are an Appropriate Remedy</u>

The Consent Decree specifically provides for a stipulated penalty of $3,000 each time Magic Mountain exceeds an Individual Permit numeric effluent limitation.

The terms of the Consent Decree, including the stipulated payment provisions, are enforceable by this Court. *See U.S. v. Armour & Co.*, 402 U.S. 673, 681-82 (1971) (a consent decree is essentially a contract, and thus must be discerned within its four corners); *see also Thompson,* 915 F.2d at 1388  (internal citations omitted) ("In construing consent decrees, courts use contract principles.").

Magic Mountain has self-reported over 700 numeric effluent violations of the Individual Permit from March 2016 to present. *See* Exhs. I, J. Magic Mountain failed to concurrently provide the Environmental Groups with stormwater monitoring and sampling data submitted to the Regional Board—documents necessary for the Environmental Groups to evaluate Magic Mountain's progress toward eliminating polluted discharges. Kwon Decl., ¶¶ 11, 20; Meneghin Decl., ¶¶ 11, 19; Schmitt Decl., ¶¶ 13, 24. Magic Mountain has failed to provide Stipulated Penalty payment to the Rose Foundation for even a single violation of the 725 self-reported exceedances. Kwon Decl., ¶ 16; Meneghin Decl., ¶ 15; Schmitt Decl., ¶ 17.

Magic Mountain's failure to comply with the mutually-agreed upon stipulated penalties and payment schedule undermines the Consent Decree's purpose of minimizing or eliminating polluted discharges from the Facility. Thus, an assessment of $2,145,000 in stipulated payments under the terms of the Consent Decree is an appropriate remedy.

Case No. CV12-05600-SVW-MAN                                     MOTION FOR CIVIL CONTEMPT

c.  <u>Plaintiffs are Entitled to Reasonable Attorneys Fees Incurred in Enforcing the Settlement Agreement</u>

The Environmental Groups requests this Court award reasonable attorneys' fees and costs incurred in enforcing the Consent Decree over the last five months. Consistent with section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), the Consent Decree expressly entitles the Environmental Groups to recover attorneys' fees and costs incurred to enforce the terms of the Consent Decree. Consent Decree, ¶ 50. The Court's inherent authority to enforce the Consent Decree also empowers the Court to award attorneys' fees and costs incurred by the enforcing party. *See TNT Marketing Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986).

"The initial determination of reasonable attorneys' fees is calculated by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate." *Hensley,* 461 U.S. at 429 ; *see also Green v. Baca*, 225 F.R.D. 612, 614-15 (C.D. Cal. 2005) (Courts analyze the number of hours expended, the hourly rate requested given the skill and experience of counsel, whether billing judgment has been exercised, and the success obtained) (citing *Hensley*, 461 U.S. at 433-35). This number is known as a "lodestar." Time spent establishing the right to attorneys' fees is compensable. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986).

To determine a reasonable attorney rate, Courts look to the rate "prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camancho v. Bridgeport Fin.*, 523 F.3d 973, 979-80 (9th Cir. 2008). The Environmental Groups' attorneys' rates are reasonable and

- 32 -

comparable to what attorneys with similar experience bill in the Los Angeles Area. Cooper Decl., ¶ 38-39, 47-51; Kwon Decl., ¶ 32.

The Environmental Groups expended considerable time and resources to negotiate settlement, amend the Consent Decree, conduct a site visit, and in bringing this Motion. Declarations describing the qualifications, hourly rates, and time expended in the course of this Consent Decree enforcement by Daniel Cooper, Erina Kwon, and Hannah Mathieson are filed concurrently with this Motion. As set forth therein, the Environmental Advocate's fees and costs are calculated based on the hourly rates of the Environmental Groups' counsel and consulting expert. The fees and costs total $148,380.53 to date. *See* Exhs. E, F, G, H.

The Environmental Groups also seek to recover expenses and fees incurred in drafting the reply and preparing for and attending the hearing on this Motion. The Environmental Groups will submit supplemental documentation updating the Court on its attorneys' fees and costs once these proceedings have concluded.

## VI.   CONCLUSION

For the foregoing reasons, the Environmental Groups respectfully request the Court adopt the attached Proposed Order.

//

//

//

//

//

- 33 -

DATED: February 11, 2026

Daniel Cooper
Attorney for LA Waterkeeper, Wishtoyo
Foundation, Ventura Coastkeeper, and
Friends of the Santa Clara River
SYCAMORE LAW, INC.

Case No. CV12-05600-SVW-MAN                                    MOTION FOR CIVIL CONTEMPT

# CERTIFICATE OF COMPLIANCE

Counsel of Record hereby certifies that pursuant to Rule 8.204(c)(1) or 8.360(b)(1) of the California Rules of Court, the enclosed brief is produced using 14-point Roman type including footnotes and contains approximately 6,586 words, which is less than the total words permitted by the rules of Court. Counsel relies on the word count of the computer program used to prepare this brief.

Dated: February 11, 2026

_____
Daniel Cooper
Attorney for LA Waterkeeper, Wishtoyo Foundation, Ventura Coastkeeper, and Friends of the Santa Clara River
SYCAMORE LAW, INC.

Case No. CV12-05600-SVW-MAN                          MOTION FOR CIVIL CONTEMPT